[No. A044561. First Dist., Div. One. May 28, 1991.]

CHRISTINE STUDLEY, Plaintiff and Appellant, v.
BENICIA UNIFIED SCHOOL DISTRICT et al., Defendants;
FIRE INSURANCE EXCHANGE, Intervener and Respondent.

## COUNSEL

Eisenberg & Pollack, Eisenberg, Axelrod & Highlander, Neil D. Eisenberg, Harry Pollack, Stephen R. Leopold, Lynn L. Axelrod, Judy E. Highlander and Eunice Calbert-Banks for Plaintiff and Appellant.

No appearance for Defendants.

Kroloff, Belcher, Smart, Perry & Christopherson and Orlie L. Curtis for Intervener and Respondent.

## OPINION

**NEWSOM, Acting P. J.**—The plaintiff in a personal injury suit, Christine Studley (hereafter Studley), appeals from an adverse judgment in a suit in intervention brought by the defendants' insurer.

On June 4, 1987, Studley filed a complaint alleging causes of action for negligence and wrongful death against Benicia Unified School District, Daniel R., and Leonard R. A potential plaintiff, Daryl D., was also named as a defendant pursuant to Code of Civil Procedure section 382 but was never served. On October 2, 1987, Fire Insurance Exchange (hereafter FIE), an interinsurance exchange, filed a complaint in intervention against Studley and each defendant alleging that Daniel R. and Leonard R. had tendered to it the defense of the action under a homeowner's package policy issued to Daniel R. Acknowledging it had accepted the defense of Daniel R., FIE asked for the declaration that its policy did not provide coverage for Leonard R. and that it was under no obligation to defend him against any potential liability in the case.

A hearing on May 4, 1988, achieved a series of settlements: Benicia Unified School District settled with Studley for the payment of $15,000; FIE agreed to dismiss its complaint in intervention against the school district and Daryl D.; and Daniel R. and Leonard R. entered into a settlement with Studley that will be discussed later in this opinion.

At the same hearing, the trial court bifurcated the complaint in intervention from the underlying complaint and set it for trial on May 9, 1988. FIE

did not take any actual testimony at this separate trial but rather introduced as exhibit 1 the transcript of criminal proceedings resulting in the conviction of Leonard R. for second degree murder. After taking judicial notice of exhibit 1, the trial court heard arguments of the parties and took the matter under submission. On September 22, 1988, the court ruled in a tentative decision that Leonard R. was not covered under FIE's homeowner's insurance policy. About a month later, the court entered a final decision and judgment in favor of FIE.

It is undisputed that on September 18, 1986, Leonard R. shot and killed Studley's teenage daughter, Heather D., on the premises of Benicia High School. At the time, Leonard resided at the home of his father, Daniel R., who was insured by FIE under a homeowner's insurance policy. During school hours, he took a loaded .38-caliber revolver from the nightstand in his father's bedroom and carried it to the high school. Finding Heather D. in the school yard, he killed her with a single shot of the gun.

Leonard R. contended that he loved Heather D. and intended only to frighten her. Before carrying the gun to the high school, he removed two bullets from the chamber, lying in a clockwise direction from the hammer, believing that the cylinder moved in a clockwise motion and that it would not fire with the two bullets removed. In fact, the cylinder rotated in a counterclockwise motion. The girl's death resulted from this fatal error.

In the statement of decision, the trial court made a finding generally consistent with Leonard R.'s account: "A preponderance of the evidence, and the reasonable inferences to be drawn therefrom, show that Leonard formed a preconceived design to point a partially loaded revolver at Heather at point blank range and to pull the trigger to terrorize her and thereby to inflict extreme emotional distress on her, knowing she was afraid of guns. He intended to do these things to intimidate Heather, and thereby preclude her from seeing another boy who had been writing notes to her; and he carried out this intention by grabbing Heather, pushing her against a wall, pulling the gun from where he had concealed it in the waistband of his shorts to avoid its being detected, and immediately pressing the gun into Heather's chest and pulling the trigger."

The trial court proceeded to find that Leonard's conduct amounted to extreme infliction of emotional distress within the meaning of tort law: "Leonard's deliberately intended conduct was extreme, outrageous and clearly unprivileged and done with the preconceived intent to cause emotional distress to Heather by terrifying her and attempting to intimidate her and influence her conduct. . . . It was preconceived intentional conduct toward Heather 'no reasonable person in a civilized society should be

expected to endure . . . .' " Finally, the court observed that Leonard acted with a disregard for Heather's life that amounted to the implied malice required for a conviction of murder: "Such actions further involved a high degree of probability that they would result in Heather's death; and were done for a base, antisocial purpose and with wanton disregard for human life; i.e., with an awareness on Leonard's part of a legal duty not to commit such acts, despite which Leonard committed such acts." (See CALJIC No. 8.11; *People* v. *Dellinger* (1989) 49 Cal.3d 1212 [264 Cal.Rptr. 841, 783 P.2d 200].) The killing in fact led to Leonard's conviction for second degree murder. Although the trial court made no finding with respect to this conviction, we take judicial notice of it under Evidence Code section 457.

■ The trial court ruled "that coverage of Leonard herein by Insurer's policy is precluded by the provisions of Insurance Code section 533 and of Civil Code section 1668." Both statutes prohibit insurance coverage for wilful conduct. The court did not reach the issues presented by the language of the policy itself. Two exclusions, however, have possible relevance. The policy provided generally: "We do not cover *bodily injury, property damage* or *personal injury*: . . . 3. Either: a. caused intentionally by or at the direction of an *insured*, or b. resulting from any *occurrence* caused by an intentional act of an *insured person* where the results are reasonably foreseeable." A separate provision more specifically excluded: "Personal injury caused by a violation of penal law or ordinance committed by or with the knowledge or consent of any *insured*."

The trial court's application of Insurance Code section 533 raises difficult issues. ■ As an implied term in all insurance contracts (*Nuffer* v. *Insurance Co. of North America* (1965) 236 Cal.App.2d 349, 356 [45 Cal.Rptr. 918]), Insurance Code section 533 provides: "An insurer is not liable for a loss caused by the wilful act of the insured; . . ." The statute is a specific application of the policy of Civil Code section 1668 invalidating contracts that "exempt anyone from the responsibility for his own fraud, or willful injury to the person or property of another, or violation of law, . . ." "The exclusion of intentional injury from [insurance] coverage [in the two statutes] stems from a belief that an individual should not be exempt from the financial consequences of his own intentional injury to another." (*Congregation of Rodef Shalom* v. *American Motorists Ins. Co.* (1979) 91 Cal.App.3d 690, 697 [154 Cal.Rptr. 348].) To allow insurance coverage for intentional injuries would be an "encouragement of wilfull tort" (*Tomerlin* v. *Canadian Indemnity Co.* (1964) 61 Cal.2d 638, 648 [39 Cal.Rptr. 731, 394 P.2d 571]) by giving wrongdoers "a license to wreak havoc at will." (7A Appleman, Insurance Law and Practice (Berdal ed. 1979) § 4501.09, p. 267.)

Insurance Code section 533 has been regarded as an implied exclusionary clause subject to the rules applying to other exclusionary clauses. (*Clemmer*

v. *Hartford Insurance Co.* (1978) 22 Cal.3d 865, 880 [151 Cal.Rptr. 285, 587 P.2d 1098]; *Evans* v. *Pacific Indemnity Co.* (1975) 49 Cal.App.3d 537, 541-542 [122 Cal.Rptr. 680].) Like other exclusionary clauses, the section is to be "interpreted narrowly against the insurer." (*State Farm Mut. Auto. Ins. Co.* v. *Partridge* (1973) 10 Cal.3d 94, 102 [109 Cal.Rptr. 811, 514 P.2d 123]; *Allstate Ins. Co.* v. *Overton* (1984) 160 Cal.App.3d 843, 849 [206 Cal.Rptr. 823].)

Consistent with the rule of strict construction of exclusionary insurance clauses, the courts have construed narrowly the meaning of a "wilful act" under Insurance Code section 533. The term does not encompass reckless conduct involving "conscious disregard of the rights or safety of others." (*Peterson* v. *Superior Court* (1982) 31 Cal.3d 147, 158 [181 Cal.Rptr. 784, 642 P.2d 1305].) Moreover, "an act which under the traditional terminology of the law of torts is denominated 'intentional' or 'wilful' does not necessarily fall outside insurance coverage." (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 273, fn. 12 [54 Cal.Rptr. 104, 419 P.2d 168].) An intentional action "will not exonerate the insurer from liability under Insurance Code section 533 unless it is done with a 'preconceived design to inflict injury.' " (*Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d 865, 887; *Fire Ins. Exchange* v. *Abbott* (1988) 204 Cal.App.3d 1012, 1019-1021 [251 Cal.Rptr. 620].)

■■■ Leonard R.'s conduct here went beyond merely reckless conduct; it displayed a level of intentionality that satisfied the requirements of the offense of murder. We hold that conduct actuated by implied malice, as defined in the criminal law relating to murder, involves a "preconceived design to inflict injury" that will exonerate an insurer from liability under Insurance Code section 533. Leonard R. intentionally exposed the victim to a high probability of injury in such an egregiously wrongful manner that his conduct came within the statutory policy of Insurance Code section 533 that an individual should not be exempt from the consequences of his intentional wrongdoing. For the purpose of the statute, we see no significant distinction between conduct involving an actual intention to kill and conduct involving a "high probability" of the victim's death, performed with "a base antisocial purpose and with wanton disregard for human life."[1]

As we conclude that coverage is excluded under Insurance Code section 533, we do not reach the issues presented by the exclusionary provisions of the insurance policy itself.

---

[1]Studley vigorously argues that the case is governed by a line of decisions dealing with insurance coverage of damage caused by two or more concurrent causes. (E.g., *Garvey* v. *State Farm Fire & Casualty Co.* (1989) 48 Cal.3d 395 [257 Cal.Rptr. 292, 770 P.2d 704].) Her theory is that the insured's conduct can be divided into two parts—an intentional assault and an accidental firing—and the latter was covered by the insurance policy. This interpretation of the facts is inconsistent with the finding of implied malice, which attributes intentionality to the killing itself, not merely to the preliminary assault.

■ We see no merit in the additional contention that FIE is bound by a stipulation between Studley and Daniel and Leonard R. At the settlement hearing, the two defendants stipulated to the entry of a judgment in favor of Studley in the amount of $500,000 and assigned to Studley all rights they possessed against FIE. In consideration, Studley agreed not to execute upon any judgment entered pursuant to the stipulation against either Daniel R. or Leonard R. It is, of course, true that "[a] judgment entered without contest, by consent or stipulation, is as conclusive a merger or bar as a judgment rendered after trial." (7 Witkin, Cal. Procedure (3d ed. 1985) Judgment, § 219, pp. 655-656.) But FIE did not consent to entry of the judgment and in fact explicitly stated at the hearing that it would not be bound by the stipulation. (See *Gray* v. *Zurich Insurance Co.*, *supra*, 65 Cal.2d 263, 279.) The stipulation itself does not purport to bind FIE or, for that matter, the Benicia Unified School District, but rather effects a settlement "as between Christine Studley and Leonard and Daniel R. . . . ."[2]

Studley advances three theories to avoid the obvious conclusion that the stipulation did not affect FIE. First she contends that condition 9d of the policy, providing that it would be bound by judgments against an insured, obliged FIE to respect the settlement. But this provision must be read in the context of other policy provisions stating that the insurer would indemnify only for damages "which the insured is legally liable to pay," that it reserved the right to control settlement negotiations, and that the insured's rights under the contract could not be assigned without its consent. The policy plainly did not give the insured the power to subject the insurer to liability. Secondly, she contends that FIE is bound to the stipulation under Code of Civil Procedure section 1908 as a nonparty controlling the proceedings. But the trial court found that FIE did not exert the control required by Code of Civil Procedure section 1908, and we find substantial evidence in support of this finding. Thirdly, citing *Casa de Valley View Owner's Assn.* v. *Stevenson* (1985) 167 Cal.App.3d 1182 [213 Cal.Rptr. 790], she argues that FIE is bound by the settlement presented to the court because of its participation in the settlement hearing. The *Casa de Valley View* decision, however, concerned an effort of two nonparties to rescind a stipulation. As the trial court found, FIE here "entered into no stipulation it later attempted to rescind . . . ."

---

[2]We note that, during the pendency of this appeal, the stipulation was reduced to judgment at defendant's request and over Studley's opposition. While this dispels any suggestion of collusion, it does not affect our analysis.

The judgment is affirmed.

Stein, J., concurred.

Appellant's petition for review by the Supreme Court was denied August 21, 1991.