[No. D013732. Fourth Dist., Div. One. Dec. 14, 1992.]

DAVID WRIGHT et al., Plaintiffs and Respondents, v.
FIREMAN'S FUND INSURANCE COMPANIES et al., Defendants and
Appellants.

COUNSEL

Haight, Brown & Bonesteel, Roy G. Weatherup, Michael J. Leahy, Thomas N. Charchut and Bruce P. Osmond for Defendants and Appellants.

George P. Andreos for Plaintiffs and Respondents.

OPINION

HUFFMAN, J.—The Fireman's Fund Insurance Companies (Fireman's Fund) appeals from a judgment entered after the court granted a summary judgment motion in favor of David and Lorraine Wright, husband and wife (collectively the Wrights). The judgment was based upon a stipulated judgment the Wrights had obtained against an insured[1] of Fireman's Fund, Paul Overlie (Overlie) in an earlier action. In exchange for the stipulated judgment the Wrights covenanted not to execute against Overlie personally. We

---

[1]This case arises out of an automobile accident involving a rental car. Fireman's Fund issued three insurance policies which the Wrights contend provide coverage. Fireman's Fund agrees coverage was provided under a policy it issued to the rental company. However, it disputes that coverage was provided, or if so to what extent, under two policies issued to the owner of the rental car.

are presented with the question whether an insurer that defends an insured can be bound by such a stipulated judgment entered against that individual without the insurer's consent or participation. In light of the potential for collusion and abuse presented here, we answer that question in the negative and accordingly reverse the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

### *The Accident and Rental*

On April 13, 1984, David Wright was injured and his passenger killed in a head-on collision with an automobile driven by Paul Overlie (Overlie). The accident occurred when the Overlie vehicle crossed over to the wrong side of the road. Overlie later entered a plea of guilty to a charge of felony drunk driving causing death.

Overlie had rented the accident vehicle, a 1982 Plymouth Reliant, from Performance Plus, Inc. (Performance Plus) for a two-day period. Overlie accepted the collision damage waiver and personal accident insurance provided under the rental agreement. The liability insurance coverage was limited to $15,000 for bodily injury to or death of one person and to $30,000 for bodily injury to or death of all persons as a result of any one accident. The rental vehicle was owned by Rose Automotive Services, Inc., doing business as John A. Rose Leasing (Rose). In March 1983 Rose leased or rented the vehicle to Performance Plus. Both Rose and Performance Plus were insured by Fireman's Fund at the time of the accident.

### *The Wright v. Overlie Litigation*

The Wrights filed an action (Wright v. Overlie (Super. Ct. San Diego County, 1985, No. 539417)) against Overlie, Performance Plus, Rose and others not involved in this action. Fireman's Fund provided a defense for Overlie.

The Wrights and Overlie stipulated to entry of judgment. Pursuant to Civil Code sections 953 and 954, Overlie assigned to the Wrights any causes of action he might have arising out of the accident.[2] He further consented to judgment in the amount of $1 million being entered against him. In exchange, the Wrights agreed not to execute or levy against any of Overlie's personal assets. The Wrights reserved the right to collect on any insurance policies under which Overlie may have been an insured at the time of the

---

[2]As part of the agreement, Overlie and the Wrights rescinded an earlier assignment from Overlie to the Wrights contained in a letter/agreement dated September 17, 1985.

accident. Overlie waived any rights he had to move for new trial or to file an appeal. The Wrights agreed they would report any funds received from insurance carriers to the criminal court to offset any court order for restitution.

In the settlement negotiations and for purposes of the stipulated judgment, Overlie was represented by his personal counsel. Overlie's insurance defense counsel was present at the hearing in which the stipulation was read into the record; however, he stated that personal counsel was solely representing Overlie for purposes of the stipulated judgment. Insurance defense counsel further stated he could neither oppose nor consent to the stipulated judgment. Pursuant to the stipulation approved by Overlie's personal counsel, judgment was entered against Overlie in the sum of $1 million plus interest. An amended judgment was entered in the sum of $1 million plus $95,573.53 in costs for a total judgment of $1,095,573.53 plus interest.

The matter went to trial against Performance Plus and Rose based on stipulated facts. The Wrights obtained a judgment for $30,000 plus $2,215.21 in costs against Rose based on Rose's ownership of the vehicle. (Veh. Code, §§ 17150, 17151.) The judgment provided that any sums paid to the Wrights on behalf of Overlie under the judgment against him were to be credited to the judgment against Rose. The court dismissed the action against Performance Plus with prejudice.

*The Pleadings in This Action*

Shortly after obtaining judgments against Overlie and Rose, the Wrights filed a complaint for declaratory relief and money damages against Fireman's Fund, Performance Plus, American Automobile Insurance Company (the Fireman's Fund company issuing the insurance policies),[3] Rose and Overlie. The Wrights attached to their complaint copies of three insurance policies issued by Fireman's Fund to Performance Plus and Rose. The Wrights later filed a first amended complaint, this time setting forth four causes of action and attaching the three insurance policies along with copies of the Overlie and Rose judgments.

In the first cause of action of the amended pleading the Wrights alleged Overlie was a permissive user of the vehicle involved in the accident and as a matter of law and pursuant to the attached insurance policies he was an additional insured up to the total amount of the judgment entered against him. The Wrights further alleged the insurance companies had failed and

---

[3]Hereafter when we refer to Fireman's Fund we include American Automobile Insurance Company.

refused to pay anything to satisfy the judgments against Overlie and Rose except for $30,000. In their second cause of action the Wrights alleged that pursuant to the insurance policies the insurance companies were obligated to pay them $1,095,573.53 plus interest pursuant to the judgments rendered against Overlie and Rose. The Wrights further alleged they were third party beneficiaries under the attached policies and requested the court to issue a judgment in the total amount of the Overlie and Rose judgments. The third cause of action alleged the Wrights were judgment creditors of Overlie and Rose and that they brought the action against the defendants pursuant to Insurance Code section 11580, subdivision (b)(2). The fourth cause of action alleged the Wrights were Overlie's assignees and requested all sums due to Overlie be ordered paid to them.

The insurance companies, Rose and Performance Plus answered, generally denying the allegations of the amended complaint pursuant to Code of Civil Procedure section 431.30. The defendants specifically denied that the Wrights were damaged in the sums alleged or in any sum whatsoever. They further specifically denied any wrongful conduct on their part or that the Wrights were injured or damaged. The answer set forth four affirmative defenses: 1) failure to state a cause of action, 2) the causes of action were barred by Code of Civil Procedure section 335 et seq., 3) the Wrights were not parties to the insurance contracts and had no standing or privity to make their claims, and 4) the causes of action were barred by the doctrine of laches.

### The Insurance Policies

At the time of the accident, Fireman's Fund provided insurance to Rose through a "General/Garage Liability Garagekeepers Physical Damage Insurance" policy, No. MXD 549 98 11, issued to Rose Automotive Services, Inc., doing business as: John A. Rose Toyota; John A. Rose Imports; John A. Rose Leasing; John A. Rose, an individual. According to the declarations page, bodily injury and property damage liability coverage was provided in the amount of $500,000 per occurrence and in the aggregate. As to "covered autos" the insureds were the persons or organization shown as named insureds in the declarations and anyone else using a covered auto with the named insureds' permission. The permissive user coverage was subject to certain exceptions including garage operations customers. The policy also contained "no-action" and cooperation clauses.[4]

Under the liability coverage the company agreed to pay all damages the insured legally must pay because of "bodily injury or property damage to

---

[4]The policy specifically provided: "No legal action may be brought against us until there has been full compliance with all the terms of the policy. In addition, under LIABILITY INSURANCE, no legal action may be brought against us until we agree in writing that the

which the insurance applies caused by an accident and resulting from business operations or garage operations." Under the "exclusions" section the insurance does not apply to "[a]ny covered auto while leased or rented to others." The policy, however, includes an endorsement changing the exclusion with respect to covered autos while "leased" to others and providing liability insurance to the lessee to "the minimum limit required by any applicable compulsory or financial responsibility law." The endorsement defines a "leased auto" as an auto "lease[d] to a lessee under a leasing agreement of one year or more for which the leasing agreement requires the Lessee to provide primary insurance for you."

At the time of the accident, Fireman's Fund also covered Rose with a "Supercover Umbrella and Excess Liability" policy, No. XCG 161 59 96, providing excess and umbrella coverage up to $5 million. The insureds under the excess coverage included the named insured and any other person or organization included as an insured or additional insured in any primary policy. The excess liability coverage was subject to the same "definitions, terms, conditions and exclusions" as contained in the primary insurance. Policy No. MXD 549 98 11 was designated on the schedule of primary insurance.

In addition to the Rose's primary and excess insurance, Fireman's Fund also provided insurance to Performance Plus. The policy provided for combined bodily injury and property damage liability coverage of $500,000 for each occurrence and in the aggregate. The liability provision applied to any auto used under a written rental agreement issued by the insured for less than one year in which the insured agrees to provide liability insurance. The policy contained an endorsement, however, limiting coverage for insureds other than those shown as named insureds in the declarations to the higher of the minimum limit of liability specified in the financial responsibility law of the accident venue or the limit of liability stated in the rental agreement.

### The Rental or Lease Agreement Between Rose and Performance Plus

On March 19, 1983, Rose either leased or rented the car involved in the accident to Performance Plus. Performance Plus was owned and operated by Sally Rose-Roberts and her husband, the daughter and son-in-law of John A. Rose, owner of Rose. The rental or lease agreement was memorialized by a document entitled "Daily Rental Agreement Insurance Election and Certificate." The document is a preprinted form with multiple spaces for entry of information, most of which are left blank.

---

insured has an obligation to pay or until the amount of that obligation has been finally determined by judgment after trial."

The policy imposed on the insured a duty to "[c]ooperate with us in the investigation, settlement or defense of any claim or suit. No insured shall, except at his or her own cost, voluntarily make any payment, assume any obligation or incur any expense."

The name John A. Rose Leasing with an address is typed in the upper left corner of the document. "Performance Plus, Inc." is typed in as the "Customer" and an address is listed in the space "Business Address." A description of the Plymouth Reliant by make, style, etc. was typed in spaces provided. Under the heading of "Account" the following is added: 1) in the space designated "Date & Time Out" is typed "3-19-[19]83," 2) in the space designated "Miles @" is typed "unlimited," 3) the words "Weeks @" have been crossed out and the figure "$160.25/mo." added, and 4) in the space designated "Less Deposit" is typed "(Direct Bill)." The form is dated March 19, 1983, and in the space "Customer Signature" Sally Rose-Roberts signed as "Pres." for Performance Plus Inc. Sally Rose-Roberts also signed a waiver of collision coverage in the same capacity. The back of the form contains multiple preprinted "Terms and Conditions of Daily Rental Agreement." The terms include an integration clause and a "Certificate of Insurance" limiting insurance coverage.

### The Summary Judgment Proceedings

The Wrights moved for summary judgment/summary adjudication. The two issues set forth to be decided were whether Overlie was an insured to the full extent of the policy limits under both Rose's primary and excess insurance policies.

In the separate statement of undisputed facts the Wrights set forth as undisputed facts: 1) Overlie was a permissive user of the Plymouth Reliant owned by Rose; 2) Overlie was negligent in his operation of the vehicle, which negligence resulted in the collision causing injuries to the Wrights; 3) on April 13, 1984, Fireman's Fund had in effect insurance policy No. MXD 549 98 11 (primary insurance) with Rose as one of the named insureds and a policy limit of $500,000; 4) on April 13, 1984, Fireman's Fund had in effect insurance policy No. XCG 161 59 96 (excess insurance) with Rose as one of the named insureds and a policy limit of $5 million; 5) the 1982 Plymouth Reliant was a covered auto under policy No. MXD 549 98 11; 6) Overlie was an additional insured under policy No. MXD 549 98 11; 7) Overlie was an additional insured under policy No. XCG 161 59 96; 8) Overlie was not working at the time of the accident; 9) on March 19, 1983, Rose rented the Plymouth Reliant to Performance Plus; and 10) on April 13, 1984, Performance Plus rented the vehicle to Overlie for approximately two days.

In the memorandum of points and authorities in support of their motion, the Wrights' entire argument centered on Overlie being a permissive user covered to the full extent of the policies. In support of their motion the

Wrights submitted the amended judgments against Rose and Overlie, both rental agreements, copies of the primary and excess insurance policies issued to Rose, the September 17, 1985, assignment from Overlie to the Wrights, certain admissions by Rose, and portions of the depositions of Overlie and Sally Rose-Roberts.

Fireman's Fund, Rose and Performance Plus opposed the motion, arguing the Plymouth Reliant was a "leased vehicle" as defined by Rose's primary insurance policy and that under the policy's endorsement, coverage of leased vehicles was conditional and limited to the minimum statutory limits. The defendants additionally argued that Rose could exclude coverage for permissive users such as Overlie under Insurance Code section 11580.1, subdivision (d)(2).

In their separate statement of disputed facts the defendants disputed only three facts set forth by the Wrights. The defendants disputed that the Plymouth Reliant was a covered auto under policy No. MXD 549 98 11 and that Overlie was an additional insured under both policy No. MXD 549 98 11 and policy No. XCG 161 59 96. With respect to the dispute that the Plymouth was a covered auto, the defendants contended the vehicle was not covered under the Rose policy because it was a "leased vehicle" and covered under the Performance Plus policy. As to the question whether Overlie was an additional insured, the defendants contended he was not an insured under the primary policy since he was driving an excluded automobile and was insured under the Performance Plus policy for the minimum statutory amount, and he was not an insured under the umbrella policy because he was not an insured under the primary policy.

In support of their opposition the defendants submitted copies of the three insurance policies, a copy of a portion of John A. Rose's deposition, a copy of the "Daily Rental Agreement" wherein Performance Plus either leased or rented the Plymouth Reliant from Rose, and a related financing agreement purportedly supporting the argument the "lease" was for in excess of one year.

In reply, the Wrights submitted additional points and authorities and objected to the introduction of the John A. Rose testimony on the basis of lack of foundation, the parol evidence rule, and materiality.

At oral argument the parties' entire argument revolved around whether or not the Plymouth Reliant was a covered auto under the Rose policies. The Wrights again objected to the evidence submitted by the defendants, which objections the court failed or refused to rule upon. After oral argument the court took the matter under submission.

On September 12, 1990, the court issued a minute order granting summary adjudication of issues "#1 and #2." On September 20, 1990, the Wrights' attorney filed a declaration stating "Summary Judgment" had been rendered in favor of the Wrights and asking judgment to be entered accordingly. The declaration set forth the amounts purportedly due under the Overlie judgment. On September 20, 1990, the court signed and filed an order that "Summary Judgment/Summary Adjudication of the Issues" be granted. The court specifically found Overlie was an insured to the full extent of the policy limits under Rose's primary and excess insurance policies.

Fireman's Fund, Rose and Performance Plus moved for reconsideration of the court's ruling granting the Wrights' motion for summary judgment/summary adjudication. The defendants' argument again related solely to the nature and effect of the leasing/rental agreement between Rose and Performance Plus. In support of their motion the defendants submitted, inter alia, the previously submitted excerpts from John A. Rose's deposition and a portion of the Performance Plus policy listing Rose as an additional loss payee. The defendants additionally submitted declarations from Sally Rose-Roberts and John A. Rose each stating that at the time of contracting it was their intention to lease the Plymouth for 25 months.

The Wrights opposed the motion, reiterating their earlier arguments. The Wrights also argued the defendants had conceded the auto was rented to Performance Plus by not disputing the Wrights' statement of undisputed fact that Rose "rented" the Plymouth to Performance Plus. The Wrights objected to the defendants' declarations and requested they be stricken on the grounds of the parol evidence rule and materiality.

After the court denied the motion for reconsideration, the defendants filed opposition to the entry of judgment contending no motion for summary judgment had been granted and that to enter judgment the court would have to make findings beyond the issues litigated. The defendants argued the Wrights' motion for summary judgment/summary adjudication had only raised the issue whether Overlie was an insured under the two Rose policies. They contended whether Overlie was an insured was only one of several issues that had to be determined before coverage for the underlying accident could be decided. The defendants specifically raised a policy exclusion dealing with the use of alcoholic beverages. Additionally, the defendants argued the Overlie stipulated judgment was not on the merits, was not a legal obligation against Overlie and was not binding on Fireman's Fund. The defendants maintained that the purpose of the stipulated judgment was clearly to relieve Overlie from any legal obligation and that there were no independent findings on the amount of the Wrights' damages. For the court

to base its decision on such judgment invited collusion and was against public policy.

In support of their motion the defendants submitted, inter alia, a copy of the reporter's transcript from the Wright v. Overlie hearing at which the court accepted the $1 million settlement and the stipulation was read into the record.

In opposition the Wrights argued, inter alia, the underlying Overlie judgment was valid and not subject to attack by the defendants. The Wrights specifically argued defendants had failed to raise the validity of the stipulated judgment as an affirmative defense, in opposition to the summary judgment motion, or in their motion for reconsideration. Additionally, Fireman's Fund had provided the attorneys for Overlie, Rose and Performance Plus in the underlying litigation and Fireman's Fund was in "privity" with those defendants. Since the defendants were all present at the stipulation hearing and offered no objection and reserved no right to attack the judgment and additionally failed to appeal the judgment, they should be precluded from doing so at this time.

 ▬ ■ The court entered judgment against the two insurance company defendants for $1,172,407.93, from which they appeal.[5]

DISCUSSION

I

*Introduction*

Fireman's Fund generally contends the court erred in granting summary judgment because the Wrights did not prove every element necessary to entitle them to judgment. In particular, Fireman's Fund contends the judgment must fall because the Wrights failed to plead and prove compliance with the basic obligations of the insurance policy, more specifically the cooperation and "no-action" clauses. As discussed below, the issues raised with respect to the cooperation and "no-action" clauses were outside the scope of the pleadings and provided no basis for denial of summary judgment.

---

[5] The notice of appeal, which purportedly appeals from the judgment, the ruling on the motion for summary judgment and the ruling on the motion for reconsideration, is filed by the two insurance companies, Rose and Performance Plus. The rulings on the motions are nonappealable orders. (Code Civ. Proc., § 437c, subd. (*l*).) Rose and Performance Plus are not aggrieved by the judgment against the insurance companies and have no standing to appeal. (Code Civ. Proc., § 904.) The appeal as to Rose and Performance Plus and as to the rulings granting summary judgment and denying reconsideration is therefore dismissed.

Additionally, Fireman's Fund contends the court erred because the Overlie stipulated judgment, a necessary element of the Wrights' action, cannot bind the insurer. The Wrights counter that Fireman's Fund failed to place the stipulated judgment in issue by way of affirmative defense or opposition to the summary judgment motion. Having failed to do so, the Wrights contend Fireman's Fund cannot raise the issue on appeal.

 It is clear that a defendant may waive the right to raise an issue on appeal by failing to raise the issue in the pleadings or in opposition to a summary judgment motion. (See *Wilson v. Gentile* (1992) 8 Cal.App.4th 759, 768-769, fn. 7 [10 Cal.Rptr.2d 713].) It is also clear that Fireman's Fund's representation in the court below does not present an example of exemplary lawyering. It would have been far better practice for Fireman's Fund to have raised the binding nature of the stipulated judgment both as an affirmative defense and in opposition to the summary judgment motion. However, as discussed below, we conclude it was the Wrights' burden to establish a binding judgment and that the totality of the information before the trial court when it entered judgment demonstrated no such judgment existed. Accordingly, we conclude the court erred and the judgment must be reversed.

In light of our decision as to the effect of the stipulated judgment, we conclude it is unnecessary to address the multiple and complicated issues Fireman's Fund additionally raised relating to the propriety of the trial court's decision on the nature of the lease/rental agreement between Rose and Performance Plus.

## II

### Standard of Review

We state familiar rules for our review. Summary judgment is a drastic procedure that denies the adverse party the right to trial on the merits. (*Mann v. Cracchiolo* (1985) 38 Cal.3d 18, 35 [210 Cal.Rptr. 762, 694 P.2d 1134].) It should only be granted "if all the papers submitted show that there is no triable issue as to any material fact and that the moving party is entitled to judgment as a matter of law." (Code Civ. Proc., § 437c, subd. (c).) Any doubt concerning the propriety of granting the motion should be resolved in favor of the party opposing the motion. (*Stationers Corp. v. Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].

 "When the moving party is the plaintiff, the burden is to prove every element necessary to establish its right to the relief it seeks and to disprove

every affirmative defense asserted against it. Until this is done, the defendant has no burden to produce opposing evidence or to disprove anything at all. [Citations.]" (*United Community Church v. Garcin* (1991) 231 Cal.App.3d 327, 338 [282 Cal.Rptr. 368].) ■ In a motion for summary judgment the pleadings delimit the scope of the issues. (*FPI Development, Inc. v. Nakashima* (1991) 231 Cal.App.3d 367, 381 [282 Cal.Rptr. 508].)

■ In carrying out our review we apply the same three-step analysis required of the trial court: 1) identify the issues framed by the pleadings, 2) determine whether the moving party has established facts which negate the opposing party's claim and justify a judgment in the moving party's favor, and 3) if the summary judgment motion prima facie justifies a judgment, determine whether the opposing party demonstrates the existence of a triable, material issue of fact. (*AARTS Productions, Inc. v. Crocker National Bank* (1986) 179 Cal.App.3d 1061, 1064-1065 [225 Cal.Rptr. 203].)

### III

#### *Policy Obligations and Limitations*

For the first time on appeal, Fireman's Fund argues the judgment must be reversed because the Wrights failed to meet their burden of pleading and proving Overlie complied with his basic obligations under the Rose insurance policies. Specifically, Fireman's Fund argues the Wrights failed to establish compliance with the primary policy's cooperation clause and satisfaction of the policy's "no-action" clause. In a related but separate argument, Fireman's Fund, again for the first time on appeal, argues summary judgment was improper because Overlie was a "garage operations customer" which would limit coverage under the policy to the statutory minimum.

■ Fireman's Fund's arguments exhibit a basic misconception as to the pleading and proof burdens in actions on an insurance policy. The party suing upon the policy has only to allege in general terms compliance with the obligations imposed by the policy. The defendant insurer must allege any breach of the terms of the policy upon which it intends to rely. (*American Home Assurance Co. v. Essy* (1960) 179 Cal.App.2d 19, 22 [3 Cal.Rptr. 586].) It is also the burden of the insurer to bring itself within any exculpatory or exclusionary clauses contained in the policy. (*Clemmer v. Hartford Insurance Co.* (1978) 22 Cal.3d 865, 878 [151 Cal.Rptr. 285, 587 P.2d 1098].) It is not incumbent upon the party suing to sift through the policy to anticipate defenses upon which the insurer may rely.

The Wrights bore the burden on moving for summary judgment to prove every element necessary to establish their right to relief and to disprove

every affirmative defense asserted against them. (*United Community Church v. Garcin, supra,* 231 Cal.App.3d at p. 338.) However, the issues to be addressed in the motion were limited by the pleadings. (*FPI Development, Inc. v. Nakashima, supra,* 231 Cal.App.3d at p. 381.) ■ In the absence of a Fireman's Fund request for leave to amend the pleadings, the court had no occasion to inquire about issues not included in the pleadings. (*Gootee v. Lightner* (1990) 224 Cal.App.3d 587, 593, fn. 4 [274 Cal.Rptr. 697]; *Krupp v. Mullen* (1953) 120 Cal.App.2d 53, 57 [260 P.2d 629].) ■ ■ ■ ■ Having failed to raise the issues by way of affirmative defense or a request to amend, Fireman's Fund may not for the first time on appeal contend summary judgment was precluded on this basis.[6]

## IV

### The Overlie Stipulated Judgment

Fireman's Fund argues the Wrights failed to meet their burden of proving all the elements required to establish their right to relief. In particular, Fireman's Fund contends the Wrights had to establish Fireman's Fund was bound by the Overlie/Wright stipulated judgment and obligated to pay it. Fireman's Fund contends it cannot be bound by the settlement and stipulated judgment in which it did not participate and to which it did not consent. It argues the judgment was premised on the Wrights' covenant not to execute which precluded any personal exposure on Overlie's part and eliminated any interest he might have had to negotiate the issue of liability or the extent of damages in good faith. Rather, Fireman's Fund contends the entire purpose of the "settlement" arrangement was to convert the Wrights' personal injury suit into a direct action against Fireman's Fund for money damages of $1 million without the benefit of an iota of evidence. Fireman's Fund contends it could not intervene in the underlying suit without prejudicing its insured and risking an action for bad faith. According to Fireman's Fund, principles of due process require the insurer have its day in court.

---

[6]Upon reversal and remand, we leave to the trial court's sound discretion whether or not to grant Fireman's Fund leave to amend upon a proper motion. However, we note the possible validity of Fireman's Fund's arguments with respect to the "no-action" clause based on the recent case of *Rose v. Royal Ins. Co.* (1991) 2 Cal.App.4th 709 [3 Cal.Rptr.2d 483]. *Rose* involved a stipulated judgment and "no-action" clause similar to the one in issue here. Both clauses require a judgment *after trial* before a direct action could be filed against the insurer. The *Rose* court found that requiring judgment after trial did not violate Insurance Code section 11580 and upheld the sustaining of the insurer's demurrer without leave to amend. (*Rose v. Royal, supra,* at pp. 716, 719.) In the face of a possibly meritorious defense, refusal to allow leave to amend may constitute an abuse of discretion if a motion is timely made and granting the motion will not prejudice the opposing party. (*California Casualty Gen. Ins. Co. v. Superior Court* (1985) 173 Cal.App.3d 274, 278 [218 Cal.Rptr. 817]; *Morgan v. Superior Court* (1959) 172 Cal.App.2d 527, 530 [343 P.2d 62].)

In response, the Wrights take the position the burden was on Fireman's Fund to attack the stipulated judgment by way of affirmative defense or at least in its opposition to the summary judgment motion. The Wrights contend Fireman's Fund instead chose not to place the judgment in issue and proceeded on the coverage issue alone. Having lost on that issue Fireman's Fund now seeks to attack the underlying judgment without having placed it in issue and without the Wrights having had an opportunity to conduct discovery and introduce evidence on the issue. Additionally, the Wrights cite to case law allowing an insured to settle without the consent of the insurer if the insurer has denied coverage or refused to defend.

As discussed below, we conclude that a binding judgment is a necessary element to establish the Wrights' right to relief. As moving party the Wrights had the burden of proving every element necessary to establish their right to relief before Fireman's Fund was required to produce any evidence. (*United Community Church* v. *Garcin, supra,* 231 Cal.App.3d at p. 338.) Moreover, while Fireman's Fund did not attack the stipulated judgment by way of affirmative defense, it did in its answer specifically deny that the Wrights were damaged in the sums alleged or in any sum whatsoever. By doing so, Fireman's Fund placed the amount of damages and indirectly the stipulated judgment in issue.

*A Binding Judgment Is a Necessary Element of the Cause of Action*

While not specifically stated, it is clear from a review of the Wrights' filings that their summary judgment motion was based on their third cause of action in which they alleged they were judgment creditors of Overlie and Rose and brought their action pursuant to Insurance Code[7] section 11580, subdivision (b)(2).[8] Section 11580[9] requires a policy issued or delivered in this state which covers liability for injuries to a person or covers liability for

[7]Hereafter, all statutory references are to the Insurance Code unless otherwise specified.

[8]There is language in the Wrights' points and authorities and declaration of counsel that indicates the Wrights may have intended their summary judgment motion to also rest upon their cause of action as Overlie's assignees. However, the assignment cause of action requires a determination of what sums are due and owing Overlie from Fireman's Fund. Overlie made no evidentiary presentation or argument as to what those sums would be. If their position is that the sums owing would be the amount of the Overlie stipulated judgment, we disagree. (See *Smith* v. *State Farm Mut. Auto. Ins. Co.* (1992) 5 Cal.App.4th 1104, 1114, 1116, fn. 5 [7 Cal.Rptr.2d 131], discussed at pp. 1021-1023, *post.*)

[9]Section 11580 in pertinent part provides:

"A policy insuring against losses set forth in subdivision (a) shall not be issued or delivered to any person in this state unless it contains the provisions set forth in subdivision (b). Such policy, whether or not actually containing such provisions, shall be construed as if such provision were embodied therein.

"(a) Unless it contains such provisions, the following policies of insurance shall not be thus issued or delivered:

loss of or damage to property caused by a vehicle or draught animal (§ 11580, subds. (a)(1)(2)), to include a provision that whenever judgment is secured against the insured in an action based upon bodily injury, death, or property damage, the judgment creditor may sue the insurer on the policy, subject to its terms and limitations, to recover on the judgment (§ 11580, subd. (b)(2)). Under the section, if the policy does not actually contain the required provision, it is construed as if it did so. A direct action under section 11580 is a contractual action on the policy to satisfy a judgment up to policy limits.

 Under section 11580 a third party claimant bringing a direct action against an insurer should therefore plead and prove: 1) it obtained a judgment for bodily injury, death, or property damage, 2) the judgment was against a person insured under a policy that insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal, 3) the liability insurance policy was issued by the defendant insurer, 4) the policy covers the relief awarded in the judgment, 5) the policy either contains a clause that authorizes the claimant to bring an action directly against the insurer or the policy was issued or delivered in California and insures against loss or damage resulting from liability for personal injury or insures against loss of or damage to property caused by a vehicle or draught animal.

 Under section 11580 the judgment against the insured is clearly an essential element of the claimant's right to recover against the insurer. The Wrights in their respondents' brief acknowledge that the burden is on them to establish judgment was entered in their favor against Overlie and that they are Overlie's judgment creditors. They contend their burden is met by the amended judgment against Overlie submitted in support of their motion for summary judgment. However, while the Wrights submitted the amended judgment in support of their motion, they did not put the judgment in issue.

The motion itself asked for summary judgment but presented as specific issues only whether Overlie was an insured to the full extent of the Rose

---

"(1) Against loss or damage resulting from liability for injury suffered by another person . . . .

"(2) Against loss of or damage to property caused by draught animals or any vehicle, and for which the insured is liable, . . .

"(b) Such policy shall not be thus issued or delivered to any person in this state unless it contains the following provisions:

" . . . . . . . . . . . . . . . . . . . . . . .

"(2) A provision that whenever judgment is secured against the insured . . . in an action based upon bodily injury, death, or property damage, then an action may be brought against the insurer on the policy and subject to its terms and limitations, by such judgment creditor to recover on the judgment."

policies. In their separate statement of undisputed facts the Wrights set forth that Overlie was a permissive user driving a Plymouth Reliant owned by Rose, that Overlie was negligent in the operation of the vehicle resulting in the collision proximately causing the Wrights' injuries, that on the date of the accident Fireman's Fund had the two Rose insurance policies in effect, that the Plymouth was covered under the primary policy, that Overlie was an additional insured under both policies, that Rose rented the Plymouth to Performance Plus, and that Performance Plus rented the Plymouth to Overlie. In the points and authorities in support of the motion the Wrights only referred to the questions related to whether Overlie was an insured and the Plymouth a covered vehicle under the policies.

The burden was on the Wrights to establish a judgment sufficient to meet the requirements of section 11580. They failed to address the issue. Fireman's Fund ultimately raised the issue in its opposition to the entry of judgment, after it realized the court intended to enter judgment. Had the Wrights put the effect of the stipulated judgment in issue in their summary judgment motion, it is clear Fireman's Fund would have contended the judgment could not bind the insurer, particularly since Fireman's Fund had specifically contested the damage issue in its answer. Moreover, the limited nature of the issues raised by the Wrights in their motion may have lulled Fireman's Fund into a false sense of security that other issues were still to be resolved and resulted in Fireman's Fund's failure to raise the issue until its opposition to entry of judgment.

There is no indication in the record that the trial court ruled upon Fireman's Fund's opposition to the entry of judgment. It appears the court simply entered judgment without addressing the opposition. In doing so, the court may have mistakenly concluded Fireman's Fund had the burden of raising the effect of the stipulated judgment and failed to do so in a timely manner or the court may have concluded the insurer as a matter of law was bound by the stipulated judgment. Assuming the court action was based on the latter reasoning, we turn now to the question whether the stipulated judgment was sufficient to bind the insurer in a section 11580 cause of action.

*The Stipulated Judment Cannot Bind the Insurer*

To sue an insurer directly, a party must have obtained a final judgment against the insured. (See *Chamberlin* v. *City of Los Angeles* (1949) 92 Cal.App.2d 330, 332 [206 P.2d 661].) A judgment on the merits, however, is not always required and insurers have been bound by default and stipulated judgments under certain circumstances. (See, e.g., *Zander* v.

*Texaco,Inc.* (1968) 259 Cal.App.2d 793, 799, 804-806 [66 Cal.Rptr. 561] [an insurer that renounced coverage and defense was bound by a default judgment obtained after the insured did not appear at trial in exchange for a covenant not to execute]; *Clemmer* v. *Hartford Insurance Co.*, *supra*, 22 Cal.3d 865, 884-886 [default judgment binding where insurer learned of wrongful death suit the day before the hearing on the default judgment but failed to assume control and management of the suit against its insured by way of a motion to set aside the judgment pursuant to Code Civ. Proc., § 473]; *Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 228, 236-242 [178 Cal.Rptr. 343, 636 P.2d 32] (*Samson*) [an insurer that refused to defend was bound by a judgment entered after its insured settled with the injured party and thereafter presented no defense at trial].) Additionally, the fact the insured's settlement with the injured party included a covenant not to execute against the insured does not prevent the judgment from being binding on the insurer. (See, e.g., *Samson*, *supra*, 30 Cal.3d at p. 240; *Zander* v. *Texaco, Inc.*, *supra*, 259 Cal.App.2d at p. 802; see also *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9 [123 Cal.Rptr. 288, 538 P.2d 744] [entire judgment entered after trial on merits binding on insurer that had defended but refused a reasonable settlement offer]; *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788, 802-803 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142] [same].)

The Wrights argue summary judgment was correctly entered based on *Samson*. *Samson* involved an accident strikingly similar to the one at issue here. Vagle, an insured of Transamerica Insurance Company, drove his car on the wrong side of the road resulting in Mrs. Samson's death and the injury of Mr. Samson and the Samson children. Vagle pled guilty to vehicular manslaughter. Vagle's vehicle was insured under two insurance policies, one issued by State Farm Mutual Automobile Insurance Company (State Farm) and the other issued by Transamerica Insurance Company (Transamerica). (*Samson*, *supra*, 30 Cal.3d at pp. 224-225.) State Farm assumed the defense in a civil suit filed by the Samsons, while Transamerica denied coverage and declined the Samsons' attorney's urging to enter the suit. (*Id.* at pp. 226-228.)

Vagle and the Samsons settled the suit. In exchange for State Farm's payment of the policy limits of $100,000 the Samsons covenanted not to execute against Vagle. Vagle agreed to assign his rights against Transamerica to the Samsons and to cooperate in trial of the action against him. (*Samson*, *supra*, 30 Cal.3d at p. 228.) The matter proceeded to trial where evidence of Vagle's criminal conviction was introduced. Mr. Samson described his injuries and those of his children, and expert testimony was presented as to the value of the loss of Mrs. Samson's services. Vagle

presented no defense and did not cross-examine witness. The court awarded $725,000 in damages. (*Ibid.*)

The Samsons offered to settle the $625,000 balance of their claim against Vagle for Transamerica's $300,000 policy limits. Transamerica did not respond. Upon Vagle's assignment of his cause of action against Transamerica, the Samsons sued Transamerica for bad faith and obtained summary judgment for $625,000. (*Samson, supra,* 30 Cal.3d at p. 229.)

On appeal, the Supreme Court first found against Transamerica on the coverage issue and then addressed whether Transamerica could be bound by the earlier damage findings. Based on the familiar rules that an insurer which wrongfully refuses to defend is liable for the judgment against its insured (*Gray* v. *Zurich Insurance Co.* (1966) 65 Cal.2d 263, 279 [54 Cal.Rptr. 104, 419 P.2d 168]), and that an insurer which rejects a reasonable settlement offer within policy limits may be required to pay more than its policy limits (*Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau, supra,* 15 Cal.3d at p. 12), the court bound Transamerica to the full judgment against Vagle. (*Samson, supra,* 30 Cal.3d at pp. 237, 240.)

In addition to relying on *Samson,* the Wrights rely on *Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775 [244 Cal.Rptr. 655, 750 P.2d 297] and *Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d 788.[10] *Isaacson* sets forth the established law that if an insurer erroneously denies coverage or improperly refuses to defend, the insured is entitled to make a reasonable settlement of the claim in good faith and then maintain an action against the insurer to recover the amount of the settlement. Additionally, in a later suit against the insurer the reasonable settlement may be used as presumptive evidence of the insured's liability on the underlying claim and the amount of such liability. (*Isaacson* v. *California Ins. Guarantee Assn., supra,* 44 Cal.3d at pp. 791-792.) The court explained the presumption applies only where the insurer has "wrongfully refused to cover or defend a claim, leaving the insured to mount his own defense or suffer a default." (*Id.* at p. 793.)

In *Critz* v. *Farmers Ins. Group, supra,* 230 Cal.2d 788 the plaintiff was injured in an accident involving Farmers Insurance Group's (Farmers) insured. Before suit was filed, Farmers unreasonably refused a settlement offer from Critz for policy limits. The insured assigned any right of action he

---

[10]The Wrights additionally relied on *Abellon* v. *Hartford Ins. Co.* (1985) 167 Cal.App.3d 21 [212 Cal.Rptr. 852]. *Abellon* dealt with the question whether a claim for loss of consortium was subject to the per person or per occurrence limitation of the insurance policy. The insurer had raised the binding nature of a stipulated judgment in the trial court but neither the trial court nor the Court of Appeal rested its decision on the ground. The case is inapposite and we do not address it further.

might have against his insurer to Critz in exchange for an agreement Critz would not attempt to collect a judgment from the insured. (*Id.* at p. 792.) Critz then filed suit against the insured and Farmers defended. The case proceeded to trial and resulted in a jury verdict far in excess of policy limits. (*Ibid.*) Critz then sued Farmers on the assignment. Based on Farmers' wrongful rejection of the settlement offer, the Court of Appeal reversed the trial court's determination the assignment was void.

All of the cases in which a judgment not on the merits has been found binding on the insurer were based upon the principle an insurer who has an opportunity to defend and wrongfully fails to do so is liable on the judgment against the insured. (*Samson, supra,* 30 Cal.3d at pp. 237, 240; *Clemmer* v. *Hartford Insurance Co., supra,* 22 Cal.3d at p. 884; *Zander* v. *Texaco, Inc., supra,* 259 Cal.App.2d at p. 802.) None of the cases relied on by the Wrights is similar to the situation presented here.

Here, Fireman's Fund provided Overlie with a defense and there is no evidence it rejected a reasonable settlement offer. Rather, while Fireman's Fund was providing a defense, Overlie, without Fireman's Fund's participation or consent, negotiated a settlement with the Wrights through personal counsel. The settlement protected Overlie from any liability and was without evidentiary basis.[11] We perceive of no basis on which Overlie would have had any interest in protecting the interests of Fireman's Fund by vigorously contesting liability or the extent of damages. To the contrary, Overlie's interest would appear to be to the contrary. We are frankly disturbed by the potential for abuse apparent in a situation where an insurer, in the absence of a breach of its duty to its insured, could be bound by a consent judgment of this nature.

Fireman's Fund argues principles of due process mandate that it not be bound by the stipulated judgment. It contends that where, as here, there is a liability or coverage conflict between the insurer and the insured, the insurer's remedy is to provide a defense under reservation of rights, and to address the coverage issues in a subsequent declaratory relief action. Citing *Studley* v. *Benicia Unified Sch. Dist.* (1991) 230 Cal.App.3d 454 [281 Cal.Rptr. 631] and *State Farm Fire & Cas. Co.* v. *Byrd* (N.D.Cal. 1990) 729 F.Supp. 1265, affd. *State Farm Fire & Cas. Co.* v. *Engstrom* (9th Cir. 1991) 933 F.2d 772, Fireman's Fund argues an insurer is not bound by a stipulated judgment entered without its consent. It also argues the stipulated judgment

---

[11]*Samson,* upon which the Wrights primarily rely, may be distinguished from the instant case not only on the basis of Transamerica's refusal to defend and rejection of a reasonable settlement offer, but also because the amount of the Samson judgment was determined by the court after at least a minimal evidentiary showing. (*Samson, supra,* 30 Cal.3d at p. 228.)

is analogous to the terms of a settlement criticized in *Doser* v. *Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883 [162 Cal.Rptr. 115] (*Doser*).

*Doser* arose out of a plane crash in which both the pilot, Kelly, and passenger, Doser, were killed. Doser's heirs sued Kelly's estate for wrongful death. Middlesex Mutual Insurance Company (Middlesex) failed to defend and rejected a policy limits settlement demand. Kelly's estate and Doser's heirs then compromised the damage claim for $980,000, a figure arrived at by the Doser heirs' attorney. In satisfaction of the claim, Kelly's estate assigned its claim against Middlesex in exchange for a release from personal liability. (*Doser, supra,* 101 Cal.App.3d at p. 888.) The Doser heirs then filed a bad faith suit against Middlesex pursuant to the assignment. Eventually, Middlesex defended in the wrongful death action, and the action was dismissed at the request of the Doser heirs without judgment being entered. (*Id.* at pp. 887, 889.)

Middlesex prevailed in the bad faith action. On appeal the Court of Appeal affirmed on the basis that no cause of action for breach of the implied covenant of good faith and fair dealing arose until the insured incurred a binding judgment in excess of the policy limits. (*Doser, supra,* 101 Cal.App.3d at p. 892.) The court commented extensively on why the compromise figure should not bind the insurer.

"The glaring flaw in the Doser Heirs' case against Middlesex is the unprecedented manner in which they arrived at the $980,000 damage figure. They bootstrapped their damages with the ingenious assistance of counsel.

"No judge or jury ever considered the facts of the wrongful death case and came up with an appropriate verdict on which a judgment could be based. No agreement as to damages was ever reached in which a representative of the insurance company participated. . . .

". . . . . . . . . . . . . . . . . . . . . . . .

". . . Here, [counsel for the Doser heirs] acting virtually alone set the amount of damages, . . . We know of no legal precedent condoning such action, nor do we propose to author an opinion which would become such authority. Such a worthless paper transaction cannot support the Doser Heirs' damage claim in their cause of action against Middlesex." (*Doser, supra,* 107 Cal.App.3d at pp. 892, 893-894.)

In *State Farm Fire & Cas. Co.* v. *Byrd, supra,* 729 F.Supp. 1265, Byrd killed Engstrom and was later convicted of second degree murder. In a

wrongful death suit filed by Engstrom's survivors, the court granted summary adjudication of the uncontested issues that Byrd caused Engstrom's death but did not act with premeditation or intent to kill. The parties then stipulated to judgment under which Byrd admitted liability for negligently causing Engstrom's death and the survivors agreed not to levy on Byrd's personal assets. Byrd additionally assigned the survivors his rights against State Farm Fire & Casualty Co. (State Farm), his homeowner's insurer. State Farm had defended in the wrongful death action under a reservation of rights.

State Farm sued in federal court for a declaration of rights it had no liability under the policy based on an intentional acts exclusion and section 533. The court found the stipulated judgment denying Byrd intended to kill Engstrom did not collaterally estop State Farm from relitigating the issue of intent. In discussing the stipulation the court found there was no basis to find the issue of intent was ever vigorously contested or decided by a trier of fact because of Byrd's and State Farm's conflict of interest as to the issue of intent. The court further found no merit to the argument State Farm could have intervened in the wrongful death action to separately contest summary adjudication of the issue of intent because to do so would have subjected State Farm to a potential for bad faith liability. (*State Farm Fire & Cas. Co. v. Byrd, supra,* 729 F.Supp. at p. 1267.)

*Studley* v. *Benicia Unified Sch. Dist., supra,* 230 Cal.App.3d 454 also involved a wrongful death action, this time against a father and son. Fire Insurance Exchange (FIE) was the insurer on a homeowner's policy issued to Daniel R., father of Leonard R. Leonard R. shot his girlfriend, Studley's daughter, with his father's gun. FIE accepted the defense of the father, but filed a complaint in intervention asking for a declaration the policy provided no coverage for the son and that FIE was under no duty to defend him pursuant to section 533 prohibiting coverage for intentional acts. (*Id.* at p. 456.) The father and son settled with Studley and filed a stipulated judgment for $500,000 in exchange for a covenant not to execute. Both father and son assigned to Studley all rights they possessed against FIE. On the complaint in intervention, the court found the insurer could not be bound by a stipulation to which it did not consent and in fact had stated it would not be bound. (*Id.* at p. 460.)

In addition to the cases raised by Fireman's Fund we have located a recent case relating to this issue. In *Smith* v. *State Farm Mut. Auto. Ins. Co., supra,* 5 Cal.App.4th 1104 (*Smith*), the Court of Appeal held a stipulated judgment with a covenant not to execute was not sufficient to meet the requirements of a judgment necessary to assign a bad faith cause of action against an insurer.

*Smith* was a wrongful death action which arose out of an automobile accident in which the Smiths' son was killed. Donnelly, an insured of both Fireman's Fund and State Farm, was convicted of manslaughter with gross negligence in connection with the accident. Fireman's Fund defended but State Farm declined. (*Id.* at p. 1108.) Fireman's Fund reached a settlement with the plaintiffs wherein Donnelly stipulated to judgment in the amount of $500,000. The plaintiffs stipulated not to execute against Donnelly personally and Donnelly assigned all claims he might have against State Farm for failure to defend or settle to the plaintiffs. Fireman's Fund partially satisfied the judgment.

The Smiths filed suit against State Farm relying inter alia on the assignment. The trial court sustained State Farm's demurrer and entered a judgment of dismissal. Upon the Smith's appeal, the Court of Appeal assumed State Farm breached a duty to defend. (*Smith* v. *State Farm Mut. Auto. Ins. Co.*, *supra*, 5 Cal.App.4th at p. 1110.) It then discussed much of the law discussed earlier in this opinion including *Isaacson* v. *California Ins. Guarantee Assn.*, *supra*, 44 Cal.3d 775, *Critz* v. *Farmers Ins. Group*, *supra*, 230 Cal.App.2d 788, *Samson*, and *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau*, *supra*, 15 Cal.3d 9, but concluded the case before it presented three novel questions:

"(1) [I]s a judgment against the insured a necessary condition to its power to assign a cause of action for bad faith against the insurer? (2) if so, will the device of a stipulated judgment with a covenant not to execute suffice as the required judgment? or (3) will a criminal conviction resting on a finding of gross negligence serve the purpose of a judgment against the insured?" (*Smith*, *supra*, 5 Cal.App.4th at p. 1112.)

The court answered the first question in the affirmative and then turned to whether the stipulated judgment with covenant not to execute could bind the insurer in an action on the assignment. Answering that question in the negative the court stated:

"A stipulated judgment with a covenant not to execute will not bind the insurer under Civil Code section 2778, subdivision 5, because it does not represent a 'recovery against' the insured; the statute plainly refers to the sort of recovery that will trigger a duty to indemnify, that is, a recovery imposing liability. The covenant not to execute shields the insured from such liability. Similarly, the stipulated judgment will not bind the insurer through the doctrine of res judicata because the insurer is not a party to the judgment. . . .

"We see no distinction between a stipulated judgment with covenant not to execute and the device employed in *Doser* v. *Middlesex Mutual Ins. Co.*, *supra*, 101 Cal.App.3d 883. There, the claimant and insured entered into a settlement compromising a damage claim for $980,000. In satisfaction of the claim, the insureds then assigned their rights against the insurer in exchange for a release from personal liability. The court regarded the assignment as a 'worthless paper transaction.' . . . It reasoned that to sanction such a transaction 'would be to invite collusion between the claimants and the insured' by allowing them to 'bootstrap[] their damages with the ingenious assistance of counsel.' [Citation. ]" (*Smith, supra,* 5 Cal.App.4th at p. 1114.)

The court ultimately reversed the trial court's sustaining of the demurrer because it found the criminal conviction constituted an adjudication of liability to the Smiths which permitted Donnelly to assign his bad faith action. (*Smith, supra,* 5 Cal.App.4th at pp. 1115-1116.) However, the court further found that the insurer could not be bound by the amount of damages in the stipulated judgment which had not been litigated. (*Id.* at p. 1116, fn. 5.)

We concur with the concern expressed by the *Smith, Byrd,* and *Doser* courts as to the potential for abuse and collusion when a stipulated judgment or settlement under which the insured has no personal liability binds the insurer. With no personal exposure the insured has no incentive to contest liability or damages. To the contrary, the insureds' best interests are served by agreeing to damages in any amount as long as the agreement requires the insured will not be personally responsible for those damages.

The situation presented here, where there is no evidence Fireman's Fund breached its duty to Overlie, is even more egregious than that presented in *Smith* and *Doser* where the court either found or assumed the insurer had breached its duty to defend. We find no reason to distinguish between the judgment required for an action on an assignment addressed in *Smith* and the judgment required for a direct action presented here. Whether an action is brought pursuant to assignment or section 11580, the same potential for abuse arises in binding an insurer to a stipulation in which it did not participate or to which it did not consent.

 Before entering judgment the trial court had before it the reporter's transcript from the hearing on the stipulated judgment showing the nature of

the judgment entered against Overlie.[12] The transcript demonstrated Overlie consented to the $1 million judgment in exchange for a covenant not to execute and that the Wrights specifically reserved the right to collect on Overlie's insurance policies. The transcript contained no evidentiary support for the amount of damages contained in the judgment. The transcript additionally showed the stipulation was negotiated by Overlie's personal counsel and that while Overlie was represented by insurance defense counsel, defense counsel stated he could neither oppose nor consent to the stipulated judgment. The information was sufficient to have alerted the court as to the injustice inherent in binding the insurer to that judgment.

In summation we hold that where an insurer provided a defense to its insured in the underlying litigation,[13] and the insured, without the participation or consent of the insurer, stipulated to a judgment without evidentiary support and with no potential for personal loss, such judgment is insufficient to impose liability on the insurer in a later action against the insurer under section 11580. To hold otherwise would create in the insured the ability to escape all liability for his or her own wrongdoing while imposing on the insurer totally unsupported liability. The potential for fraud and collusion is evident.

V

*Coverage Issues Raised Below*

Fireman's Fund argues the trial court erred in granting summary judgment because material issues of fact existed as to whether the Plymouth Reliant was a covered auto under the Rose insurance policies. In particular, Fireman's Fund raises multiple and complex questions on the application of the parol evidence rule in the interpretation of the lease/rental agreement between Rose and Performance Plus. Normally, we would address these issues for the guidance of the trial court on remand. However, since the case is likely to be decided on unrelated grounds requiring no determination of these issues, we decline to do so here. We therefore leave to a later day and a different record the resolution of these issues, if such resolution becomes necessary.

---

[12]The burden being on the Wrights to establish a binding judgment for purposes of section 11580, it is irrelevant that Fireman's Fund did not provide the court with the reporter's transcript until it opposed entry of judgment.

[13]At oral argument and by a denied request to augment the record, the Wrights raised the issue whether Fireman's Fund defended under the Rose policies as opposed to the Performance Plus policy. The record before the trial court simply demonstrated that Fireman's Fund had defended Overlie in the underlying litigation and did not distinguish between the different policies. We decline to consider what impact a refusal to defend under the Rose policies would have and leave that issue to the trial court's consideration upon a proper evidentiary showing.

## DISPOSITION

Judgment reversed.

Kremer, P. J., and Todd, J., concurred.