[No. A052329. First Dist., Div. One. Apr. 15, 1992.]

JANICE SMITH, Individually and as Personal Representative, etc., et al.,
Plaintiffs and Appellants, v.
STATE FARM MUTUAL AUTOMOBILE INSURANCE COMPANY,
Defendant and Respondent.

## COUNSEL

Eugene N. Rosenberg and B.E. Bergesen III for Plaintiffs and Appellants.

Ropers, Majeski, Kohn, Bentley Wagner & Kane, Mark G. Bonino and Daniel R. Kirwan for Defendant and Respondent.

## OPINION

NEWSOM, J.—On November 10, 1986, Janice Smith and Robert Smith, individually and as personal representatives of the estate of their son,

Christian Smith (hereafter appellants), filed this action against State Farm Mutual Automobile Insurance Company (hereafter State Farm) alleging breach of its duties under an insurance policy covering Patrick Donnelly (hereafter Donnelly), who killed their son in an automobile accident. The third amended complaint filed May 23, 1990, states three causes of action: first, breach of the implied covenant of good faith and fair dealing based on Donnelly's assignment to appellants of his claims against State Farm; second, breach of statutory duties under Insurance Code section 790.03, also based on Donnelly's assignment to appellants; and third, appellants' own claim against State Farm for breach of the statutory duties under section 790.03. The second cause of action appeared for the first time in the third amended complaint; the other causes of action were stated in the original complaint. Appellants now appeal from a judgment of dismissal entered pursuant to an order sustaining a demurrer to each cause of action.

The third amended complaint alleges that in 1982 Donnelly owned and managed an automotive repair business. A customer, Steven Stein, left an automobile at the business for repairs. On October 21, 1982, Donnelly drove Stein's automobile with his alleged consent and fatally struck appellants' son, Christian Smith. At the time of the accident, Donnelly was insured by a liability insurance policy with Fireman's Fund Insurance Company with coverage of $300,000. Steven Stein was insured by a liability insurance policy with State Farm, with policy limits of $100,000, which covered as additional insureds those persons using his automobile with his consent.

The complaint further alleges that "[o]n July 13, 1983 a criminal judgment was filed in San Francisco County Superior Court pursuant to which Donnelly was convicted of driving while intoxicated, manslaughter with gross negligence, and felony hit and run driving." Later that year, appellants filed a wrongful death action against Donnelly and other persons. Fireman's Fund Insurance Company undertook Donnelly's defense in this action. State Farm relied on an exclusion in its policy to deny coverage. The complaint alleges that in fact "the exclusionary language relied on by STATE FARM did not apply to Donnelly, and coverage under [its] policy was wrongfully denied to Donnelly."

Before the wrongful death action went to trial, Donnelly and Fireman's Fund Insurance Company reached a settlement. Donnelly stipulated to a judgment in favor of appellants in the amount of $500,000, and entered into an assignment and release agreement. He assigned to appellants all claims that he might have against State Farm for its failure to defend or settle the wrongful death action, and, in consideration of this assignment, appellants covenanted not to execute on the stipulated judgment against Donnelly

himself. Fireman's Fund Insurance Company partially satisfied the judgment by making a payment of $300,000, the amount of its policy limits. Appellants then filed the present action against State Farm, relying both on Donnelly's assignment and on their cause of action for breach of the statutory duties of Insurance Code section 790.03.

Appellants' first cause of action, based on Donnelly's assignment to them of his rights against State Farm for breach of the covenant of good faith and fair dealing, presents complex and unresolved issues. Although *Moradi-Shalal* v. *Fireman's Fund Ins. Companies* (1988) 46 Cal.3d 287 [250 Cal.Rptr. 116, 758 P.2d 58], has no direct application to this cause of action, the decision lends practical significance to the issues because it has the effect of enhancing the importance of assignments from an insured to a claimant as a means of seeking redress against insurers.

We begin by observing that an insurer owes a duty of good faith and fair dealing to additional insureds as well as to named insureds. (*Northwestern Mut. Ins. Co.* v. *Farmers' Ins. Group* (1978) 76 Cal.App.3d 1031, 1042-1044 [143 Cal.Rptr. 415].) The nature of the duty will vary according to whether the insurance policy offers primary or excess coverage to the additional insured. Appellants here characterize State Farm's policy as offering primary coverage while State Farm insists that the insurance, if any, provided excess coverage. Resolution of the issue turns on whether the policy comes within subdivisions (a)(1) or (d) of Insurance Code section 11580.9.[1] The issue cannot be resolved on the pleadings, but on either assumption, the complaint alleged facts sufficient to give Donnelly a cause of action for bad faith against State Farm.

The complaint alleges that State Farm unreasonably refused to defend the action brought by appellants. It is well established that "[a]n insurer that has

---

[1]The two pertinent subdivisions of Insurance Code section 11580.9 provide:

"(a) Where two or more policies affording valid and collectible automobile liability insurance apply to the same motor vehicle in an occurrence out of which a liability loss shall arise, and one policy affords coverage to a named insured engaged in the business of selling, repairing, servicing, delivering, testing, road-testing, parking, or storing motor vehicles, then both of the following shall be conclusively presumed: [¶] (1) If, at the time of loss, the motor vehicle is being operated by any person engaged in any of these businesses, or by his or her employee or agent, the insurance afforded by the policy issued to the person engaged in the business shall be primary, and the insurance afforded by any other policy shall be excess.

"· · · · · · · · · · · · · · · · · · · · · · ·

"(d)  Except as provided in subdivisions (a), (b), and (c), where two or more policies affording valid and collectible liability insurance apply to the same motor vehicle or vehicles in an occurrence out of which a liability loss shall arise, it shall be conclusively presumed that the insurance afforded by that policy in which the motor vehicle is described or rated as an owned automobile shall be primary and the insurance afforded by any other policy or policies shall be excess."

failed to defend may be liable for bad faith if 'it did so unreasonably or without proper cause.'" (2 Cal. Liability Ins. Practice (Cont.Ed.Bar 1991) § 25.17, p. 25-11.) Thus, if State Farm was the primary carrier, it clearly owed the insured a duty to defend the claim. On the other hand, if it was the excess carrier, the existence of such a duty cannot be precluded on the facts alleged. The complaint does not allege any policy provision relieving State Farm as an excess insurer from a duty to defend. State Farm's asserted status as an excess insurer rests on a statutory provision, regulating priority of liability for payment of claims, rather than on the actual terms of its policy. As such an excess insurer, it conceivably still owed a duty to defend the claim under the terms of its policy. (*Aetna Cas. & Surety Co.* v. *Certain Underwriters* (1976) 56 Cal.App.3d 791, 800 [129 Cal.Rptr. 47].) ■ We will proceed on this assumption since we must liberally construe the complaint in appellants' favor in reviewing a ruling on demurrer. (4 Witkin, Cal. Procedure (3d ed. 1985) Pleading, § 396, p. 446.)

■ On proof of the insurer's breach of the implied covenant of good faith and fair dealing, the insured may recover all damages proximately caused by the breach. (*Crisci* v. *Security Ins. Co.* (1967) 66 Cal.2d 425, 432-434 [58 Cal.Rptr. 13, 426 P.2d 173].) Where the insurer breaches its duty to defend, it is well established that the insured's damages may include the amount of a reasonable settlement.[2] (*Cravens, Dargan & Co.* v. *Pacific Indem. Co.* (1972) 29 Cal.App.3d 594 [105 Cal.Rptr. 607].) "[I]f an insurer 'erroneously denies coverage and/or improperly refuses to defend the insured' in violation of its contractual duties, 'the insured is entitled to make a reasonable settlement of the claim in good faith and may then maintain an action against the insurer to recover the amount of the settlement . . . .'" (*Isaacson* v. *California Ins. Guarantee Assn.* (1988) 44 Cal.3d 775, 791 [244 Cal.Rptr. 655, 750 P.2d 297].) Moreover, the fact that the insured entered into the settlement may "raise[] a presumption that the insured was liable in the amount of the settlement, . . ." (*Id.* at p. 792.) In a later action against the insurer, the settlement may be viewed as presumptive evidence of the insured's liability on the claim. (*Id.* at p. 791.)

■ The insured may assign to the claimant his cause of action against the insurer for breach of the implied covenant "without consent of the insurance carrier, even when the policy provisions provide the contrary." (*Murphy* v. *Allstate Ins. Co.* (1976) 17 Cal.3d 937, 942 [132 Cal.Rptr. 424,

---

[2]It should be noted that the insured also has a right to recover attorney fees incurred in enforcing its rights under the implied covenant of good faith and fair dealing. (*Brandt* v. *Superior Court* (1985) 37 Cal.3d 813, 817 [210 Cal.Rptr. 211, 693 P.2d 796]; 2 Cal. Liability Ins. Practice, *supra*, §§ 24.70-24.71 pp. 24-51, 24-52.) In the case of an action against an excess insurer, this right to attorney fees will include costs which the insured or its assignee incurred after the primary insurer paid the policy limits.

553 P.2d 584].) The courts have barred assignment only of claims for punitive damages or emotional distress. (*Ibid.*) As the insured's assignee, the claimant "stands in [its] shoes," possessing the rights which the insured had against the insurer. (*Woolett* v. *American Employers Ins. Co.* (1978) 77 Cal.App.3d 619, 625 [143 Cal.Rptr. 799]; 1 Witkin, Summary of Cal. Law (9th ed. 1987) Contracts, § 943 et seq., p. 841 et seq.)

In consideration of assignment of the cause of action against the insurer, the insured may secure from the claimant a covenant to hold it harmless from liability arising from the claim. The seminal case is *Critz* v. *Farmers Ins. Group* (1964) 230 Cal.App.2d 788 [41 Cal.Rptr. 401, 12 A.L.R.3d 1142]. Before trial of an action for personal injuries, the insured gave the claimant an assignment of his cause of action against the insurer for bad faith refusal to settle and received in exchange a covenant to hold him harmless from any subsequent judgment in the action. The claimant subsequently secured a judgment in excess of the insurer's policy limits and filed an action against the insurer. On appeal from a dismissal of this action, the court held that the insured's cause of action for bad faith against the insurer was assignable.

The *Critz* opinion contains an instructive discussion of relevant policy considerations. The court observed that "[p]ublic policy permitting or proscribing tactical weapons developed by claimants and insurers should be shaped by two influences: (1) the public interest in encouraging settlements, and (2) fairness, that is, equalization of the contenders' strategic advantages." The policy encouraging settlements dictates that an insurer should not be permitted "to take advantage of its own close-fisted intractability in rejecting an earlier settlement offer." (*Critz* v. *Farmers Ins. Group, supra,* 230 Cal.App.2d at pp. 800-801.) This objective is achieved by allowing the insured the right to assign a cause of action to the claimant based on the insurer's rejection of the offer. The assignment also equalizes the strategic advantages between the insured and the insurer. "When the insurer breaches its obligation of good faith settlement, it exposes its policyholder to the sharp thrust of personal liability." (*Id.* at p. 801.) But by assigning his claim against the insurer in exchange for a covenant to hold harmless, the insured can turn the insurer's wrongful rejection into a bargaining strength in dealing with the claimant. (See also *Zander* v. *Texaco, Inc.* (1968) 259 Cal.App.2d 793, 802 [66 Cal.Rptr. 561].)

Following the *Critz* decision, two decisions of the California Supreme Court have sanctioned the insured's assignment of rights against the insurer in consideration for personal release from liability. (*Samson* v. *Transamerica Ins. Co.* (1981) 30 Cal.3d 220, 240-241 [178 Cal.Rptr. 343, 636 P.2d 32]; *Johansen* v. *California State Auto. Assn. Inter-Ins. Bureau* (1975) 15 Cal.3d 9

[123 Cal.Rptr. 288, 538 P.2d 744]; see also *Dyer* v. *Northbrook Property & Casualty Ins. Co.* (1989) 210 Cal.App.3d 1540, 1550 [259 Cal.Rptr. 298]; *Ceresino* v. *Fire Ins. Exchange* (1989) 215 Cal.App.3d 814, 822 [264 Cal.Rptr. 30].) The case at bar presents, however, three novel questions: (1) is a judgment against the insured a necessary condition to its power to assign a cause of action for bad faith against the insurer? (2) if so, will the device of a stipulated judgment with a covenant not to execute suffice as the required judgment? or (3) will a criminal conviction resting on a finding of gross negligence serve the purpose of a judgment against the insured?

Appellants argue that the policies underlying the *Critz* decision have no connection with the existence of a judgment against the insured. The policies of encouraging settlement and equalizing bargaining relationships suggest that the insured should be freely allowed to "'settle with the plaintiff upon the best terms possible, . . .'" (*Samson* v. *Transamerica Ins. Co., supra,* 30 Cal.3d at p. 240.) Nevertheless, the decisions allowing assignments of a bad faith cause of action against the insurer have uniformly concerned an assignment either before or after a judgment imposing liability on the insured: the *Critz* decision involved an assignment before judgment; the *Johansen* decision, an assignment after judgment; and the *Samson* decision, two assignments, one before and the other after judgment. *Doser* v. *Middlesex Mutual Ins. Co.* (1980) 101 Cal.App.3d 883, 890 [162 Cal.Rptr. 115], contains language reflecting the assumption that a judgment imposing liability on the insured is a condition to its right to assign a cause of action against the insurer. For example, the decision states broadly: "the purported assignment [by the estate] did not support a cause of action because the Estate never suffered any legal liability and such invalidity is dispositive of the case." (*Ibid.*)

Consistent with these precedents, we recognize policy considerations for disallowing assignments of a bad faith action prior to judgment which override the countervailing policy considerations in the *Critz* decision. First, such assignments would violate the policy of Evidence Code section 1155 prohibiting evidence of insurance coverage in actions to recover damages for personal injuries. If an insured can assign its bad faith claim against the insurer prior to judgment, the issue of the insured's liability and insurance coverage will be combined in the action against the insurer. Both in *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, 306, and *Royal Globe Ins. Co.* v. *Superior Court* (1979) 23 Cal.3d 880, 891 [153 Cal.Rptr. 842, 592 P.2d 329], the Supreme Court has sought to fashion procedural rules avoiding this result.

Whether such an assignment undermines the policy of Evidence Code section 1155 is part of a more basic problem: in an action brought before

judgment by the insured's assignee against the insurer, the issue of the insured's liability cannot be litigated in an adversarial context because the insured may appear as an ally of the claimant. The assignment of tort claims for damage to property—a practice California courts have long sanctioned (7 Cal.Jur.3d, Assignments, § 4, p. 12)—does not compromise the adjudication of liability to the same extent because it does not remove the tortfeasor as a party to the litigation.

Thirdly, the assignment of bad faith claims before judgment would put excess insurers at an unfair disadvantage. It costs the insured nothing to assign a bad faith claim against the excess insurer. If such assignments were allowed without restriction, the excess insurer would often face either a second round of litigation or the necessity of filing a cross-complaint for declaratory relief in the original action. The situation of the excess insurer is critical since such assignments would be most likely to occur against an excess insurer. The claimant would have little incentive to forego judgment or a monetary settlement from the insured in exchange for such an assignment against a primary insurer.

It is true that two recent decisions suggest that an assignment of claims against the insurer may be permitted, in the absence of a judgment, where the insured pays a monetary settlement to the claimant. In *Isaacson* v. *California Ins. Guarantee Assn.*, *supra*, 44 Cal.3d 775, the court held that an insured who contributed to a settlement after the insurer refused to pay the full amount could sue for reimbursement on a theory that its payments were in satisfaction of claims covered by the insurance policy. In *Continental Casualty Co.* v. *Royal Ins. Co.* (1990) 219 Cal.App.3d 111 [268 Cal.Rptr. 193], the court permitted an excess insurer, who paid the full amount of a settlement, to sue the primary insurer for bad faith refusal to settle, relying on a theory of equitable subrogation to the insured's rights. But where the insured actually pays a settlement, the difficulties posed by Evidence Code section 1155 and the proper adjudication of liability are largely avoided; the rule treating the settlement as "presumptive evidence" of the insured's liability relieves the insured's assignee of the need to come forward with evidence of the insured's liability.[3] It is the insurer who has the option of raising the issue of liability if it wishes to defend on the ground that the insured was not liable for the amount of the settlement.

---

[3]*Isaacson* v. *California Ins. Guarantee Assn.*, *supra*, 44 Cal.3d 775, 791, states the rule as follows: "Further, if an insurer wrongfully fails to provide coverage or a defense, and the insured then settles the claim, the insured is given the benefit of an evidentiary presumption. In a later action against the insurer for reimbursement based on a breach of its contractual duty to defend the action, a reasonable settlement made by the insured to terminate the underlying claim against him may be used as presumptive evidence of the insured's liability on the underlying claim, and the amount of such liability." (See also *Kershaw* v. *Maryland Casualty Co.* (1959) 172 Cal.App.2d 248, 256-257 [342 P.2d 72]; *Ritchie* v. *Anchor Casualty*

We conclude that a judgment against the insured (or, if we read the *Isaacson* and *Continental Casualty* decisions correctly, a payment by the insured in settlement of a claim) is a condition to the insured's right to assign to the claimant a cause of action for bad faith against the insurer. Anticipating such a ruling, appellants purport to have satisfied the requirement of a judgment by entering into a stipulated judgment with a covenant not to execute. We do not, however, perceive any substance in this device.

A stipulated judgment with a covenant not to execute will not bind the insurer under Civil Code section 2778, subdivision 5, because it does not represent a "recovery against" the insured; the statute plainly refers to the sort of recovery that will trigger a duty to indemnify, that is, a recovery imposing liability. The covenant not to execute shields the insured from such liability. Similarly, the stipulated judgment will not bind the insurer through the doctrine of res judicata because the insurer is not a party to the judgment. (7 Witkin, Cal. Procedure, *supra*, Judgment, § 298, p. 737.) In *Studley* v. *Benicia Unified Sch. Dist.* (1991) 230 Cal.App.3d 454, 460 [281 Cal.Rptr. 631], we held that an identical stipulated judgment did not bind an insurer who refused to enter into the stipulation. The stipulation in *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court* (1990) 50 Cal.3d 658 [268 Cal.Rptr. 284, 788 P.2d 1156], bound the insurer only because it had been signed by its attorney.

We see no distinction between a stipulated judgment with covenant not to execute and the device employed in *Doser* v. *Middlesex Mutual Ins. Co.*, *supra*, 101 Cal.App.3d 883. There, the claimant and insured entered into a settlement compromising a damage claim for $980,000. In satisfaction of the claim, the insureds then assigned their rights against their insurer in exchange for a release from personal liability. The court regarded the assignment as a "worthless paper transaction." (*Id.* at p. 894.) It reasoned that to sanction such a transaction "would be to invite collusion between the claimants and the insured" by allowing them to "bootstrap[] their damages with the ingenious assistance of counsel." (*Id.* at pp. 892-893.)

Appellants cite *Sunseri* v. *Camperos Del Valle Stables, Inc.* (1986) 185 Cal.App.3d 559 [230 Cal.Rptr. 23], which also involved a stipulated judgment. Following the insurer's failure to defend an action for personal injuries, the insured consented to a judgment which it assigned to the claimant. When the claimant brought an action against the insurer based on

*Co.* (1955) 135 Cal.App.2d 245, 250 [286 P.2d 1000]; *Chrysler Motors* v. *Royal Indemnity Co.* (1946) 76 Cal.App.2d 785, 788 [174 P.2d 318]; *Lamb* v. *Belt Casualty Co.* (1935) 3 Cal.App.2d 624, 631-632 [40 P.2d 311].)

the judgment, the insurer moved to set it aside. The trial court denied the motion. On appeal, the Court of Appeal affirmed, holding that the insurer could be bound by the stipulated judgment. The decision does not indicate, however, that the judgment was combined with a covenant not to execute. Thus, unlike the stipulated judgment at issue here, it could bind the insurer under Civil Code section 2778, subdivision 5.[4] Appellants also cite dicta in *Ceresino* v. *Fire Ins. Exchange, supra,* 215 Cal.App.3d 814, but we attach no significance to this language which merely implies that the court might give effect to a stipulated judgment if there were coverage; the *Ceresino* court did not actually address the issue at bar. Finally, although *Wint* v. *Fidelity & Casualty Co.* (1973) 9 Cal.3d 257, 261 [107 Cal.Rptr. 175, 507 P.2d 1383, 90 A.L.R.3d 1185], involved a stipulated judgment with an agreement "not to seek personal liability from" the insured, the court did not reach the issues presented in this appeal. (See also *Ross* v. *Canadian Indemnity Ins. Co.* (1983) 142 Cal.App.3d 396, 404 [191 Cal.Rptr. 99]; *Consol. Am. Ins. v. Mike Soper Marine Services* (9th Cir. 1991) 942 F.2d 1421, 1426.)

█ Alternatively, appellants maintain that the criminal conviction of the insured for manslaughter with gross negligence constituted an adjudication of his liability to appellants which would permit him to assign his bad faith action against his insurer. Significantly, the parties stipulate that he was convicted by a guilty verdict in a jury trial. (See *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd.* (1962) 58 Cal.2d 601, 605-606 [25 Cal.Rptr. 559, 375 P.2d 439], and *Pease* v. *Pease* (1988) 201 Cal.App.3d 29, 33-34 [246 Cal.Rptr. 762], regarding the effect of a guilty plea.) This judgment of conviction will have collateral estoppel effect, conclusively establishing his negligence in appellants' civil action against him. █ " '. . . [A]ny issue necessarily decided in a prior criminal proceeding is conclusively determined as to the parties if it is involved in a subsequent civil action.' " (*Yarbrough* v. *Superior Court* (1985) 39 Cal.3d 197, 205 [216 Cal.Rptr. 425, 702 P.2d 583], italics omitted; *Mueller* v. *J. C. Penney Co.* (1985) 173 Cal.App.3d 713, 719-720 [219 Cal.Rptr. 272].) The leading case, *Teitelbaum Furs, Inc.* v. *Dominion Ins. Co., Ltd., supra,* 58 Cal.2d 601, 606, explains, "To preclude a civil litigant from relitigating an issue previously found against him in a criminal prosecution is less severe than to preclude him from relitigating such an issue in successive civil trials, for there are rigorous safeguards against unjust conviction, including the requirements of proof

---

[4]We do not reach the question of what effect would be given to a judgment approved as a good faith settlement under Code of Civil Procedure section 877.6 or similar statute. While the complaint alleges that the stipulated judgment was approved by the court, it does not include a copy of the judgment as an exhibit. On the facts alleged, we can only infer that the approval was pursuant to Code of Civil Procedure 664.6. (See *California State Auto. Assn. Inter-Ins. Bureau* v. *Superior Court, supra,* 50 Cal.3d 658, 664.)

beyond a reasonable doubt (Code Civ. Proc., § 2061) and of a unanimous verdict (Pen. Code, § 1164), the right to counsel [citation omitted], and a record paid for by the state on appeal . . . ."

Such an adjudication of liability would remove the objections we have discussed to the assignment of the insured's bad faith cause of action; the insured's assignee would not be required to litigate the issue of liability in a nonadversary context offending the policy of Evidence Code section 1155, and the excess insurer would not be put to unfair disadvantage in defending the assigned claim following such a closely related criminal conviction. ■ Accordingly, we hold that Donnelly made a valid assignment to appellants of his claim against State Farm for breach of the covenant of good faith and fair dealing.[5]

■ The second and third causes of action may be discussed briefly. Both are barred by *Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287. As noted, the second cause of action is based on an alleged assignment by the insured of a cause of action against the insurer under Insurance Code section 790.03. *Moradi-Shalal* has been held to abolish implicitly all private causes of action based on section 790.03, including first party claims by the insured against its insurer. (*Zephyr Park* v. *Superior Court* (1989) 213 Cal.App.3d 833, 837-838 [262 Cal.Rptr. 106]; *Industrial Indemnity Co.* v. *Superior Court* (1989) 209 Cal.App.3d 1093, 1097 [257 Cal.Rptr. 655].) While the decision applies prospectively, appellants alleged this cause of action for the first time in their third amended complaint which was filed well after the *Moradi-Shalal* decision. The third cause of action, stating a third party action against State Farm under section 790.03, was filed before the *Moradi-Shalal* decision, but it fails to allege "a conclusive judicial determination of the insured's liability" which *Moradi-Shalal* requires as a condition precedent to surviving section 790.03 actions against an insurer. (*Moradi-Shalal* v. *Fireman's Fund Ins. Companies, supra,* 46 Cal.3d 287, 306.) We have held that this limitation requires a judicial determination both of liability and the amount of damages. (*Marenger* v. *Hartford Accident & Indemnity Co.* (1990) 219 Cal.App.3d 625, 632 [268 Cal.Rptr. 290].) Thus, the insured's criminal conviction for manslaughter cannot constitute a "conclusive judicial determination" within the meaning of the *Moradi-Shalal* decision. Moreover, our earlier analysis of a stipulated judgment with covenant not to execute leads to the conclusion that such a stratagem is not

[5]We wish to make clear that the $500,000 settlement here is entitled to no consideration in determining the amount of damages. Moreover, appellants have not stated a cause of action for recovering damages above policy limits of State Farm's insurance policy; the stipulated judgment with covenant not to execute does not constitute an excess judgment within the meaning of *Comunale* v. *Traders & General Ins. Co.* (1958) 50 Cal.2d 654 [328 P.2d 198, 68 A.L.R.2d 883].

entitled to the significance otherwise properly accorded to a stipulated judgment under the *Moradi-Shalal* decision. (See *State Farm Mut. Auto. Ins. Co.* v. *Superior Court* (1989) 211 Cal.App.3d 5, 14-15 [259 Cal.Rptr. 50].)

The judgment dismissing the first cause of action is reversed. In all other respects, the judgment is affirmed. Costs to appellant.

Strankman, P. J., and Stein, J., concurred.