**NATIONAL STEEL CORPORATION, a Delaware corporation, Plaintiff–Appellee,**

v.

**GOLDEN EAGLE INSURANCE COMPANY, Defendant– Appellant.**

No. 95–17291.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted July 17, 1997.

Decided Aug. 6, 1997.

Irving H. Greines and Marc J. Poster, Greines, Martin, Stein, & Richland, Beverly Hills, CA, for defendant-appellant.

John L. Condrey, Gordon & Rees, San Francisco, CA, for plaintiff-appellee.

Before: FARRIS and TASHIMA, Circuit Judges, and STAGG, Senior District Judge.*

FARRIS, Circuit Judge:

Golden Eagle appeals a district court summary judgment order holding Golden Eagle liable for the stipulated settlement reached by Golden Eagle's insured after Golden Eagle denied defense to the insured because the claim did not fall with the insured's policy.

The district court had jurisdiction pursuant to 28 U.S.C. § 1332. We have jurisdiction pursuant to 28 U.S.C. § 1291. We affirm.

## BACKGROUND

In March 1988, National Steel hired Envirocare Industries, Inc. to upgrade the gas cleaning system at a National Steel steelmaking plant in Illinois. Under the contract, Envirocare was required to obtain payment and performance bonds in the amount of $2,895,500.00. Envirocare asked Golden Gate Insurance Center, and its president, Dennis DuBois, to procure the bonds. DuBois obtained the bonds from Mid–Atlantic Casualty & Surety Company.

Problems arose with Envirocare's performance, and in June 1989 National Steel attempted to make a claim on the bonds. National Steel was unable to locate Mid–Atlantic, and sought DuBois' assistance. Mid–Atlantic was eventually discovered to be a defunct, nonexistent, or assetless surety company.

In July 1990, Golden Eagle Insurance Company issued a professional errors and omissions insurance policy to Congeneric Insurance Brokers (successor-in-interest to Golden Gate), Golden Gate, and DuBois. The policy covered claims made against the insureds from August 1990 to August 1991,

provided the claim was not reasonably foreseeable to the insureds at the time the policy was executed. In January 1991, the deposition of DuBois was noticed in connection with the lawsuit National Steel had filed against Envirocare. The matter was referred to Golden Eagle, who retained a law firm to represent DuBois at the deposition, while reserving the right to contest coverage.

In April 1991, National Steel filed the present lawsuit against Golden Gate and DuBois alleging negligent failure to obtain insurance coverage, misrepresentation, and breach of contract. Kent Michitsch, an examiner for Golden Eagle, investigated the claim. He talked with several people. All relevant facts he discovered, however, were from DuBois' deposition and two letters.

DuBois' deposition testimony revealed that: the Envirocare bond was hard to place; DuBois obtained the bond knowing Mid–Atlantic was an off-shore carrier and that he had not received the financial statements he had requested from them; Mid–Atlantic had DuBois address the premium check to Euro–American Brokerage Services; and, after the bond was placed but before the Golden Eagle insurance policy was executed, DuBois received a bankruptcy notice regarding the president of Mid–Atlantic and an FBI agent visited DuBois to review the file on the Mid–Atlantic bond.

A June 1989 letter from National Steel, copied to Golden Gate and DuBois, notified Mid–Atlantic that National Steel intended to pursue a claim on the bond. In his declaration, DuBois stated that he did not recall the June letter. However, the letter was sent certified and was signed for by DuBois' secretary, who stated that it was her custom to give certified mail to DuBois.

A December 1989 letter from National Steel to Golden Gate and DuBois notified them that Mid–Atlantic was defunct and unable to meet the bond obligations, and that National Steel intended to pursue claims against Golden Gate. DuBois testified that he did not receive the December letter. The

---

* The Honorable Tom Stagg, Senior United States District Judge for the Western District of Louisiana, sitting by designation.

letter had been sent to the wrong zip code. Michitsch did not confirm with anyone at Golden Gate that they had received the letter. He did confirm with National Steel that the letter was sent and not returned, but that there had been no follow up or response to the letter. Michitsch concluded that Golden Gate had received both letters.

In May 1991, as a result of Michitsch's investigation, Golden Eagle informed Golden Gate and DuBois that it would not defend or indemnify them against National Steel's claim because they should reasonably have foreseen the claim at the time the insurance policy was executed, and therefore the claim was not covered by the insurance policy.

As a result of mediation, National Steel settled its actions against Envirocare, Golden Gate, and DuBois. Pursuant to these settlements, National Steel received payments of $150,000 from Envirocare and $120,000 from Golden Gate and DuBois. In addition, Golden Gate and DuBois entered a stipulated judgment for $1,153,321, and assigned any rights to indemnification by Golden Eagle for the judgment to National Steel in exchange for National Steel's covenant not to execute the judgment against them. Golden Eagle attended the mediation, but did not settle. National Steel then amended its complaint to include the assigned suit against Golden Eagle.

Both parties filed motions for summary judgment. The district court held that Golden Eagle had violated its duty to defend Golden Gate and DuBois because it denied defense before discovering that there was no possibility of coverage under the insurance policy. Therefore, Golden Eagle was liable for the reasonable $1,153,321 settlement plus the $18,676.39 cost of defending National Steel's suit. Golden Eagle appeals.

## DISCUSSION

A. *Standard of Review*

■ We review a district court's grant of summary judgment de novo. *Bagdadi v. Nazar,* 84 F.3d 1194, 1197 (9th Cir.1996). We review a district court's interpretation of state law de novo. *Salve Regina College v.*

*Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 1220, 113 L.Ed.2d 190 (1991).

B. *The Duty to Defend*

■ A liability insurer owes a broad duty to defend its insured against claims that create a potential for indemnity. *Montrose Chemical Corp. of Cal. v. Superior Court,* 6 Cal.4th 287, 295, 24 Cal.Rptr.2d 467, 861 P.2d 1153 (1993)(en banc)(quoting *Gray v. Zurich Ins. Co.,* 65 Cal.2d 263, 54 Cal.Rptr. 104, 419 P.2d 168 (1966)). The existence of a duty to defend turns upon the facts known to the insurer at the inception of the lawsuit, not upon the ultimate adjudication of coverage. *Id.* (quoting *Saylin v. Cal. Ins. Guarantee Ass'n,* 179 Cal.App.3d 256, 263, 224 Cal.Rptr. 493 (1986)); *Aetna Cas. & Sur. Co. v. Centennial Ins. Co.,* 838 F.2d 346, 350 (9th Cir. 1988). The duty to defend arises if the facts known to the insurer indicate a potential or possibility for indemnity. *Montrose,* 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d 1153. An insurer has no duty only if, at the time of its decision, it can prove that the claim cannot fall within policy coverage. *Id.*

■ Golden Eagle argues that *Montrose* implies that this rule is different depending on whether the facts at issue are intrinsic or extrinsic to the underlying litigation. *Montrose* does not support Golden Eagle's argument.

Golden Eagle denied coverage on the grounds that, prior to the inception of coverage, Golden Gate and DuBois had knowledge of facts that would cause them to reasonably foresee National Steel's claim against them. Based on Michitsch's investigation, at that time Golden Gate and DuBois knew that National Steel intended to pursue a claim on the Mid–Atlantic bond; that Mid–Atlantic's president was bankrupt; that Mid–Atlantic had not provided its financial statements; that the premium check had been made out to a different name; and that the FBI was interested in Mid–Atlantic. However, Michitsch, having discovered no evidence that DuBois was lying, was not entitled to assume that DuBois and Golden Gate had received the December letter. *See Downey Savings & Loan Ass'n v. Ohio Cas. Ins. Co.,* 189

Cal.App.3d 1072, 1087–88, 234 Cal.Rptr. 835 (1987).

Though the facts known to Golden Gate and DuBois would create an inference that something was wrong with the Mid–Atlantic bond, they do not establish definitively that Golden Gate and DuBois should reasonably have foreseen that National Steel would bring a claim against them for negligence in placing the bond. There was still a possibility that the claim would be covered by the Golden Eagle insurance policy. Golden Eagle breached its duty to defend.

Golden Eagle argues that later-discovered evidence of DuBois' knowledge at the time the policy was signed proves that he should reasonably have foreseen a suit by National Steel, and therefore that Golden Eagle did not violate its duty to defend. Golden Eagle relies primarily on *Williamson & Vollmer Engineering Inc. v. Sequoia Ins. Co.*, 64 Cal.App.3d 261, 134 Cal.Rptr. 427 (1976). In *Williamson* the court held that the insurer did not have to provide defense to its insured on a claim on a policy similar to the one at issue because the insured misrepresented its knowledge of potential claims at the time it executed the policy.

*Williamson* pre-dates *Montrose*, so to the extent it conflicts with *Montrose*, *Montrose's* clear rule based on the insurer's knowledge at the time defense is denied overrules any contrary rule in *Williamson*. Further, it is unclear in *Williamson* whether the insurer knew of the insured's misrepresentation at the time it denied defense. The most logical reading of the case is that the insurer did know. One of the insured's arguments that the court found unpersuasive in *Williamson* was that, once the insurer discovered the misrepresentation, it had to rescind or affirm the contract immediately, instead of waiting to see what happened, as the insurer did. *Id.* at 274–75, 134 Cal.Rptr. 427. This argument would only have been made if the insurer knew of the misrepresentation when it denied defense. *Williamson* is consistent with *Montrose*.

Golden Eagle also contends, based on *Waller v. Truck Ins. Exchange, Inc.*, 11 Cal.4th 1, 44 Cal.Rptr.2d 370, 900 P.2d 619 (1995), that an insurer does not violate its duty to

defend if it is ultimately correct about its denial of defense. However, in *Waller*, the court merely held that an insurer may rely on caselaw (as opposed to evidence) developed after it denied defense to support its denial. *Id.* at 26, 44 Cal.Rptr.2d 370, 900 P.2d 619.

Finally, Golden Eagle argues that the denial of defense was proper under an exclusion in the Golden Gate and DuBois policy for "any Claim arising out of the insolvency, receivership, bankruptcy, liquidation or financial inability to pay, of any insurance company." Golden Eagle contends that National Steel's suit against Golden Gate and DuBois arose out of Mid–Atlantic's, an insurance company's, financial inability to pay.

■ Golden Eagle has waived this argument by failing to raise it at summary judgment before the district court. Ninth Circuit appellate review is limited to the record presented to the district court at the time of summary judgment. *Lippi v. City Bank*, 955 F.2d 599, 604 (9th Cir.1992). Golden Eagle's raising of the argument in its motion for reconsideration does not preserve it for appeal. *In re Department of Energy Stripper Well Exemption Litigation*, 968 F.2d 27, 38 (Temp.Emer.Ct.App.1992).

■ Further, Mid–Atlantic's bond was a surety bond, not an insurance contract. Suretyship is included as a "class of insurance" in California Insurance Code section 105. However, not everything that is a "class of insurance" is treated as insurance for all purposes. *See Estate of Barr*, 104 Cal.App.2d 506, 511, 231 P.2d 876 (1951) (annuities, although a "class of insurance" in the Insurance Code, are not "insurance" for the purposes of the Tax Code). Golden Eagle argues that the exclusion covers "insurance companies," and regardless of the specific transaction at issue, Mid–Atlantic was an insurance company. However, exclusionary clauses are construed narrowly to afford the insured as much coverage as possible. *Waller*, 11 Cal.4th 1, 16, 44 Cal.Rptr.2d 370, 900 P.2d 619. Golden Eagle's argument is not so strong that there is no possibility that the exclusion would not apply. *See Montrose*, 6 Cal.4th at 300, 24 Cal.Rptr.2d 467, 861 P.2d

1153; *Aetna*, 838 F.2d at 350. Golden Eagle breached its duty to defend DuBois and Golden Gate.

## C. *Liability for the Settlement*

■ Golden Eagle contends that even if it violated its duty to defend Golden Gate and DuBois, it is only liable for their cost of defense, not the full settlement, unless National Steel proves that Golden Eagle acted tortiously. However, the case on which Golden Eagle relies simply held that the erroneous denial of a claim (i.e. breach of contract) does not itself support tort liability. *Tomaselli v. Transamerica Ins. Co.*, 25 Cal. App.4th 1269, 1280, 31 Cal.Rptr.2d 433 (1994).

■ California law is well settled that where an insurer improperly refuses to defend an insured, the insured is entitled to make a reasonable settlement of the claim in good faith, and then maintain an action against the insurer to recover the amount of the settlement. *Isaacson v. California Ins. Guar. Ass'n*, 44 Cal.3d 775, 791, 244 Cal. Rptr. 655, 750 P.2d 297 (1988). Further, a reasonable settlement by an insured to terminate the underlying claim is presumptive evidence of the amount of the insured's liability on the underlying claim. *Id.*

Golden Eagle argues that because National Steel acquired its rights by way of assignment with a covenant not to execute the judgment against DuBois and Golden Gate, it is not liable for the stipulated judgment. However, California courts have held that a reasonable stipulated judgment, given in exchange for a covenant not to execute, is presumptive evidence of liability. *Pruyn v. Agricultural Ins. Co.*, 36 Cal.App.4th 500, 509, 42 Cal.Rptr.2d 295 (1995); *Xebec Dev. Partners v. National Union Fire Ins. Co.*, 12 Cal.App.4th 501, 545, 15 Cal.Rptr.2d 726 (1993); *see Samson v. Transamerica Ins. Co.*, 30 Cal.3d 220, 240–41, 178 Cal.Rptr. 343, 636 P.2d 32 (1981) (insured may assign his rights against his insurer to the injured plaintiff in exchange for a covenant not to execute); *Clemmer v. Hartford Ins. Co.*, 22 Cal.3d 865, 884, 151 Cal.Rptr. 285, 587 P.2d 1098 (1978) (insurer is bound by default judg-ment against insured where insurer had repudiated obligation to defend).

In addition, interpreting California law, this circuit has previously held that where an insurer breaches its duty to defend and rejects a reasonable settlement offer within policy limits, the insurer is liable to the injured plaintiff for an assigned settlement obtained in exchange for a covenant not to execute against the insured. *Consolidated American Ins. Co. v. Mike Soper Marine Services*, 951 F.2d 186, 190 (9th Cir.1991). Although here there is no evidence that Golden Eagle rejected a reasonable settlement offer within policy limits, it was present at the settlement conferences and mediation, and thus, as the district court noted, had an opportunity to settle for what it considered to be a reasonable amount.

Golden Eagle cites *Smith v. State Farm Mutual Auto. Ins. Co.*, 5 Cal.App.4th 1104, 7 Cal.Rptr.2d 131 (1992), for the contrary conclusion. The *Smith* court held that a judgment against an insured was a requirement for an insured's right to assign a bad faith cause of action. *Id.* at 1114, 7 Cal.Rptr.2d 131. It further held that a settlement entered with a covenant not to execute did not satisfy this requirement because it was a transaction without substance that would encourage collusion between insureds and claimants. *Id.* Thus, *Smith* contradicts the rule described above.

However, the strength of authority cast by the California Supreme Court's earlier decisions, the Ninth Circuit's interpretation of those decisions, and the more recent California appellate decisions in *Pruyn* and *Xebec* outweigh the precedential value of a lone intermediate appellate court decision. The *Smith* court stated that its rule was necessary for three reasons: (1) the prohibition on evidence of insurance in personal injury actions; (2) the lack of an adversarial process in a settlement with a covenant not to execute term; and (3) unfairness to excess insurers. *Smith*, 5 Cal.App.4th at 1112–13, 7 Cal.Rptr.2d 131. The *Pruyn* court explained, however, that *Smith's* first two concerns are satisfied by the requirement that the settlement be found to be reasonable, and the third concern is not valid under

current law. *Pruyn*, 36 Cal.App.4th at 520–21, 42 Cal.Rptr.2d 295. The *Pruyn* court rejected the *Smith* rule, concluding that it "simply has no merit in light of [California legal precedent]." *Id.* at 522, 42 Cal.Rptr.2d 295. In addition, this circuit has explained that although there is a peculiarity in the insured not being at risk for a settlement, the judgment against him still can have collateral adverse effects, such as an effect on future credit. *Consolidated American*, 951 F.2d at 190–91. Golden Eagle is liable for the settlement.

■ Golden Eagle argues that even if *Xebec* is the law, there is still a triable issue of fact as to whether the settlement was reasonable and free of collusion. However, Golden Eagle is required at the summary judgment stage to produce evidence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

National Steel presented documentary evidence to the district court explaining how the settlement figure was reached. DuBois' and Golden Gate's attorney had reviewed this evidence and advised them that the figure reflected the amount that National Steel would win at trial, and that they may be liable in addition for National Steel's attorney's fees in the Envirocare action. Further, there was evidence that one year prior to the settlement, Golden Eagle valued the claim at $1 million.

Golden Eagle's evidence of the unreasonableness of the settlement was: (1) the December 1989 letter from National Steel which estimated National Steel's damages at $435,-000, and (2) Michitsch's deposition testimony that he may have seen a document indicating that National Steel's damages were unsubstantiated. The district court concluded that this evidence was inadmissible because the former was not based on the letter-writer's personal knowledge and the latter did not identify the relevant document.

■ A district court's exclusion of evidence at summary judgment is reviewed for an abuse of discretion. *Maljack Prods., Inc. v. GoodTimes Home Video Corp.*, 81 F.3d 881, 886 (9th Cir.1996). The district court

did not abuse its discretion in concluding that this evidence was inadmissable. Further, as the court noted, both of these pieces of evidence referred to time periods over a year before the settlement was reached, and therefore were not current estimates of damage. Conclusory allegations of collusion, without factual support, are insufficient to defeat summary judgment. *Zander*, 259 Cal. App.2d at 804–06, 66 Cal.Rptr. 561.

Golden Eagle had its opportunity to submit evidence creating a material issue as to the reasonableness of the settlement at summary judgment. It failed to rebut the presumption that the settlement reflected DuBois' and Golden Gate's liability. It is not entitled to a second chance.

### D. *Effect of Settlement Payments*

■ Golden Eagle argues that if it is liable for the settlement, the settlement should be offset by the $270,000 already paid to National Steel by Envirocare, DuBois, and Golden Gate. The district court held that Golden Eagle was not entitled to set-off under the collateral source rule. The collateral source rule allows an insured to recover from a tortfeasor as well as the *insured's* insurer even if it creates double recovery. *See Kardly v. State Farm Mutual Automobile Ins. Co.*, 207 Cal.App.3d 479, 486, 255 Cal.Rptr. 40 (1989). Here, however, National Steel seeks to recover first from the "tortfeasors," and second from the *tortfeasors'* insurer. The collateral source rule is inapplicable to this situation.

However, there is no risk of double recovery. National Steel brings this suit against Golden Eagle as an assignee of Golden Gate and DuBois' rights. An assignee does not sue in its own right, but "stands in the shoes of the assignor." *Bush v. Superior Court*, 10 Cal.App.4th 1374, 1380, 13 Cal.Rptr.2d 382 (1992). Golden Gate and DuBois are liable for the amount of the settlement in addition to the amount already paid to National Steel but for the covenant not to execute. The settlement does not cover the same damages as the amount already paid. Golden Eagle has not shown that this calculation of dam-

ages was unreasonable. It is liable for the full settlement amount.

AFFIRMED.