Inno EKEH, Plaintiff,

v.

**HARTFORD FIRE INSURANCE CO., Defendant.**

**No. C 98–0247 FMS(BZ).**

United States District Court, N.D. California.

Jan. 29, 1999.

Ronald J. Souza, Joseph D. Miller, Schachter Kristoff Orenstein & Berkowitz, San Francisco, CA, Wesley M. Lowe, E. Gerald Mannion, Mannion & Lowe, San Francisco, CA, for Inno Ekeh.

Robert W. Mehr, Berger Kahn Shafton Moss Figler Simon & Gladstone, Novato, CA, for ITT Hartford Group, Inc.

Robert W. Mehr, Berger Kahn Shafton Moss Figler Simon & Gladstone, Novato, CA, Ann K. Johnston, Berger Kahn Shafton Moss Figler Simon & Gladstone, Novato, CA, for Hartford Fire Ins. Co.

## ORDER DENYING DEFENDANT'S REQUEST FOR IN CAMERA REVIEW OF PRIVILEGED DOCUMENTS

ZIMMERMAN, United States Magistrate Judge.

Defendant Hartford Fire Insurance Company moves this Court to conduct an in camera review of certain privileged communications between plaintiff Inno Ekeh and his attorneys.

This case has its origins in a 1994 lawsuit filed against Ekeh and the Urban Economic Development Corporation (UEDC), Ekeh's former employer and Hartford's insured, by Kristine Knockum, a former employee and subordinate of Ekeh's. After Knockum sued, Ekeh was fired. He then filed a cross-complaint against Knockum and UEDC, alleging in part that UEDC defamed and wrongfully discharged him based on Knockum's false sexual harassment accusations. UEDC tendered defense and indemnity of the cross-complaint to Hartford, its insurer, but Hartford rejected the tender.

After substantial pre-trial discovery and preliminary settlement discussions, the case was settled at a mandatory settlement conference before the Honorable Donald S. Mitchell, Judge of the San Francisco Superior Court. Under the relevant terms of the settlement reached before Judge Mitchell, Ekeh first dismissed all but his defamation claim. UEDC then agreed to a $1.7 million stipulated judgment in favor of Ekeh that contained a covenant not to execute the judgment against UEDC. UEDC also agreed to assign Ekeh its rights against Hartford based on Hartford's refusal to defend and indemnify UEDC.

■ Ekeh then filed this action against Hartford, asserting UEDC's claim that Hartford acted in bad faith in the underlying action and seeking to recover the amount of the stipulated judgment as damages. In defense, Hartford admits breach-

ing its duty to UEDC to defend the defamation claim, Pl.'s Opp. at 2 n. 1., but attacks the legitimacy of the underlying settlement. Under state law, Hartford may avoid paying all or part of the judgment if it can show that the settlement was a product of fraud, collusion, bad faith, or was unreasonable.[1]

Asserting that the settlement was fraudulent, Hartford now invokes the crime-fraud exception to the attorney-client privilege and seeks an in camera review of certain privileged communications between Ekeh and his attorneys. In Hartford's view, the stipulated damages based entirely on the defamation claim—the only one of Ekeh's claims potentially covered by Hartford's policy—are specious. Hartford contends that the amount of the settlement was excessive and it is troubled by what it claims was a lack of attention paid to the settlement by UEDC and its attorneys. Hartford is also suspicious generally of the settlement process used here: the exchange of a covenant not to execute for an assignment of rights, Hartford argues, coupled with a lack of any independent adjudication of liability, indicates that a fraud may have occurred.

Assuming these contentions are accepted, I offer no view on whether the settlement can be set aside for bad faith or unreasonableness, an issue which is not before me. However, I conclude that the settlement scenario alleged by Hartford could not amount to fraud, and that Hartford has failed to establish the factual basis that is a prerequisite, under the doctrine of *United States v. Zolin*, 491 U.S. 554, 109 S.Ct. 2619, 105 L.Ed.2d 469 (1989), to an in camera review of attorney-client communications.

■ The crime-fraud exception to the attorney client privilege requires, implicitly, conduct that if proven could amount to fraud. In California, an actionable fraud may involve (1) the suggestion, as a fact, of that which is not true, by one who does not believe it to be true, or (2) the assertion, as a fact, of that which is not true, by one who does not believe it to be true, or (3) the suppression of a fact, by one who is bound to disclose it, or who gives information of other facts which are likely to mislead for want of communication of that fact. Cal.Civ.Code § 1709 (Deerings 1997). Here Hartford has been unable to point to or even suggest any such factual misconduct by Ekeh or by his attorney.

■ When pressed on this point at oral argument, Hartford's counsel conceded that the "factual misstatements" that Hartford attributes to Ekeh were really legal conclusions, such as that Ekeh had a viable claim for defamation, and that his damages were reasonable. Counsel conceded, and the record discloses, that UEDC did make written statements about Ekeh that could be taken as defamatory[2] and that the jury could have returned a verdict for Ekeh in the amount of $1.7 million if they accepted his testimony on damages.[3] Thus, I regard these alleged

---

**1.** Various California Courts of Appeal have articulated different versions of the showing required to set aside such a stipulated judgment. *See* Steven L. Paine & Wynn H. Sourial, *Recent Developments in California Insurance Law: Enforceability of Stipulated Judgments Against Insurance Carriers*, 22 Pepp.L.Rev. 1017 (1995).

**2.** Hartford asserts that any defamatory statements were privileged and therefore defensible. Even assuming that is the case, Hartford's second-guessing of UEDC's litigation decisions is hollow. No litigation outcome is guaranteed. Carl Williams, UEDC's attorney, stated "I don't think that the defamation claim would have survived, but the judge—you know courts. That was just my opinion." Williams Depo. at 118. Hartford passed up the opportunity to substitute its own opinion when it refused coverage. The resulting settlement may not look wise or even enforceable to Hartford, but without more, that purported lack of wisdom does not constitute factual evidence of fraud.

**3.** Hartford's motion cites repeatedly to Williams' testimony that he associated the $1.7 million in damages with the wrongful termination claim. Indeed, Williams was avowedly more concerned about the wrongful termination claim than the defamation claim.

"misrepresentations" as legal conclusions and not statements of fact. As such they may be sufficient to permit Hartford to set aside the judgment on the grounds of bad faith or unreasonableness. But they cannot constitute fraud, and therefore they cannot form the basis for invoking the crime-fraud exception to the attorney-client or work product privileges.

■ Even assuming that Hartford has alleged actions that could constitute fraud, before I would review in camera the communications between Ekeh and his counsel, I would have to be satisfied that Hartford has established "a factual basis adequate to support a good faith belief by reasonable person that in camera review the materials may reveal evidence" that the crime fraud exception applies. *Zolin,* 491 U.S. at 572, 109 S.Ct. 2619. This factual showing must be based on evidence which is not part of the privileged communications I am asked to review. *Id.* at 574, 109 S.Ct. 2619. I would also have to determine whether in my discretion a review of the privileged documents was warranted. *Id.* at 572, 109 S.Ct. 2619.

Hartford has failed to make the required factual showing. Hartford's speculations and legal conclusions are inadequate.[4] *See United States v. Chen,* 99 F.3d 1495, 1503–04 (9th Cir.1996). In addition to the conclusions addressed above, Hartford prof- fers that UEDC approved the settlement without considering the amount. A review of the available evidence suggests that Hartford's version of events is not entirely accurate, and the reality not nearly as sinister as Hartford implies. UEDC's attorney, Carl Williams, testified that the UEDC Board of Directors approved the settlement's legal structure, authorized Williams to complete the settlement, and assigned the Board President to work with him. Williams Depo. at 97, 100. This arm's length approach to the final terms is hardly unusual, and does not mean that the final settlement amount went *unconsidered.* Williams testified that the method of calculating Ekeh's damages was one he could foresee a jury using, *id.* at 16–17, and that the final amount satisfied his "concern" that the number not be so large that it would appear UEDC had done something "horrendous" to Ekeh, *id.* at 93–94. Hartford's evidence shows, at most, that UEDC and Williams cared about the final amount, but "not greatly." Williams Depo. at 18. In any event, I conclude that I cannot read into UEDC's attitude any hint of misrepresentation by Ekeh, the opposing party.

■ To the extent Hartford urges me to adopt a per se rule that an insurer has the right to in camera review of communi-

Williams does not state, however, the conclusion Hartford would have me reach: that $1.7 million did not or could not *also* represent the defamation damages if that claim were sustained by a jury. The $1.7 million figure represented Ekeh's economic damages, based on his salary projected over the remainder of his tenure and through retirement with UEDC, and an award of general damages. Williams Depo. at 104–105. Had UEDC assured Ekeh of prompt and certain payment, he likely would have settled for a substantially lower amount. In view of the uncertainty that he would ever collect anything, it is hardly surprising Ekeh demanded what he thought was the maximum value of his claim. Without more evidence, I cannot see how this constitutes fraud.

4. The weakness in Hartford's showing is all the more apparent when contrasted with the showing made in cases where in camera review has been granted. For example, in *United States v. Chen* the government alleged that the defendant company engaged in a specific scheme of tax fraud involving falsified invoices. 99 F.3d 1495, 1503–04 (9th Cir. 1996). The government then submitted to the District Court actual blank pre-signed invoices that would facilitate the scheme, along with a former employee's affidavit showing that the defendants planned to use their lawyers to prepare fraudulent corrective Customs disclosures. *Id.; see also United States v. Jacobs,* 117 F.3d 82, 88 (2d Cir.1997) (approving in camera review based on a tape recording of defendant wherein defendant described attorney's involvement with and advice concerning specific ongoing fraudulent scheme).

cations between its abandoned insured and the insured's attorney, whenever the insured signs a stipulated judgment containing a covenant not to execute, at a settlement that is judicially supervised but otherwise lacks independent adjudication, I decline the invitation.

Hartford reads too much into *Smith v. State Farm Mut. Auto. Ins. Co.*, which disapproved stipulated judgments containing a covenant not to execute as "transactions without substance" that would encourage collusion between insureds and claimants. 5 Cal.App.4th 1104, 1114, 7 Cal.Rptr.2d 131 (1992). Hartford would take the *Smith* rule, which finds this type of settlement almost collusive per se, and graft it onto the law of privilege to invoke the crime-fraud exception automatically.

*Smith*'s impact has been seriously circumscribed by subsequent state case law, which favors a case by case analysis of each settlement and stipulated judgment to assess whether it is sufficiently reliable to justify enforcement against the insurer. *National Steel Corp. v. Golden Eagle Ins. Co.*, 121 F.3d 496, 501 (9th Cir.1997); *McLaughlin v. National Union Fire Ins. Co.*, 23 Cal.App.4th 1132, 1154, 29 Cal. Rptr.2d 559 (1994).[5]

Far more importantly, Hartford confuses two very different legal doctrines. *Smith*, *McLaughlin*, and related cases seek to address a whole spectrum of problematic settlements—from "unreasonable" awards to outright fraud. They do so with a single broad approach, assessing the reliability of the underlying settlement, even though the particular tests applied vary from case to case. The underlying policy concern remains the same, however, and that concern is clearly for the proper allocation of risk between insurer and insured in the realm of insurance litigation.

■ The crime-fraud exception to the attorney-client privilege rests on an entirely different legal doctrine. The party seeking to invade the privilege has the burden ultimately of demonstrating that there is "reasonable cause to believe that the attorney's services were utilized in furtherance of [an] ongoing unlawful scheme." *Chen*, 99 F.3d at 1503 (9th Cir.1996) (quoting *In re Grand Jury Proceedings*, 87 F.3d 377, 381 (9th Cir.1996)). The evidence must point to an *actionable fraud*, and not merely an "unreasonable" or otherwise unreliable settlement.[6] The standard is high because the legal right at stake is the oldest and most established evidentiary privilege. § 2290 Wigmore on Evidence (McNaughton). Invading that privilege, even for in camera review, goes far beyond the mere shifting of burdens or allocation of risks between insurer and insured; the attorney-client privilege, it has been said, "is essential to preservation of liberty against a powerful government." *Chen*, 99 F.3d at 1499.

■ Thus, I do not find that the mere structure of this settlement supports a per se suspicion of fraud, and Hartford offers nothing more. There is no evidence that the settlement activities were hidden from Hartford. *See Andrade v. Jennings*, 54 Cal.App.4th 307, 335, 62 Cal.Rptr.2d 787

---

**5.** Indeed, a recent and oft-cited California appellate case suggests a presumption *opposite* of that urged by Hartford, holding that "when . . . a liability insurer wrongfully denies coverage or refuses to provide a defense, then the insured is free to negotiate the best possible settlement consistent with his or her interests, including a stipulated judgment accompanied by a covenant not to execute. Such a settlement will raise an evidentiary presumption in favor of the insured (or the insured's assignee) . . . [and] shift the burden of proof to the insurer to prove that the settlement was unreasonable or the product of fraud or collu-

sion." *Pruyn v. Agricultural Ins. Co.*, 36 Cal. App.4th 500, 509, 42 Cal.Rptr.2d 295 (1995).

**6.** The blurred distinction between the wrongs that will undermine a settlement and "true" fraud has been noted by at least one California Court of Appeals. *See Span, Inc. v. Assoc. Int'l Ins. Co.*, 227 Cal.App.3d 463, 484, 277 Cal.Rptr. 828 (1991) (observing that collusion to procure a judgment against an insurer "is not necessarily tantamount to the tort of fraud in that there need not be a misrepresentation of a material fact.")

(1997) (collusion indicated where insured concealed true amount of settlement demand and agreement from excess insurer). There is no evidence that UEDC received a financial "pay-back" from the settlement. *See, e.g., Cunningham v. Goettl Air Conditioning,* Inc., —— P.2d ——, 1997 WL 633728 (Ariz.App. Div. 1 1997). The settlement was judicially supervised, by a judge who appears to have been actively involved. Williams Depo. at 115. The settlement terms were not hidden from the judge, but rather placed on the record. *See Andrade* at 333, 62 Cal.Rptr.2d 787 (collusion indicated where parties at prove-up hearing did not inform Magistrate Judge of settlement covenants and expert witness described hearings as a "one-sided sham").

Finally, even if this were a close case, I would exercise my discretion in this matter in favor of Ekeh. *Zolin,* 491 U.S. at 572, 109 S.Ct. 2619. To the extent Hartford is claiming this settlement was objectively unreasonable, because the amount was excessive and the defamation claim was weak, it does not need the privileged communications to prove its case. To the extent Hartford is claiming something more, such as fraud, it should proffer some factual evidence linking Ekeh or his attorney with a fraud before I would invade the privilege by conducting an in camera review. This is not done.

For the reasons appearing above, **IT IS HEREBY ORDERED** that Defendant's request for an in camera review of privileged documents is **DENIED.**